NORTHWESTERN INSULATION and Aetna Casualty & Surety Co., Plaintiffs-Appellants,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Edward P. Soletski, Insulation Consultants Management Service, Lumbermens Mutual Casualty Co., Sprinkman Sons Construction, Employers Insurance of Wausau, and State of Wisconsin Work Injury Supplemental Benefit Fund, Defendants-Respondents.

Court of Appeals

*No. 88–0061. Submitted on briefs August 9, 1988.—Decided October 12, 1988.*

(Also reported in 432 N.W.2d 620.)

For the plaintiffs-appellants the cause was submitted on the briefs of *Borgelt, Powell, Peterson & Frauen, S.C.* by *Thomas A. Siedow* and *Paul R. Riegel* of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Donald J. Hanaway*, attorney general, and *Lowell E. Nass*, assistant attorney general, of Madison.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J.   Northwestern Insulation appeals from a December 1, 1987 judgment of the circuit court, which upheld the Labor and Industry Review Commission's award of worker's compensation benefits to Edward P. Soletski to be paid by Northwestern Insulation. The critical issue on appeal is whether the Commission's conclusion that Northwestern Insulation was Soletski's last employer whose employment caused his disability is supported by credible evidence. We reverse.

I. Soletski suffers from asbestosis and seeks worker's compensation benefits for that condition. During the course of his career, Soletski worked on construction projects for a number of employers and was exposed to asbestos material during the course of that work. His last exposure to asbestos fibers was, however, prior to 1973. In 1962 and in 1967, he was exposed to asbestos fibers while working for Northwestern Asbestos and Cork Insulation Company. He was also exposed to asbestos fibers in 1969, when he worked for Industrial Insulation Corporation of Wisconsin. Although Soletski worked for Northwestern Insulation on various projects in 1975, 1980, 1981 and 1982, he was not exposed to asbestos during those periods of employment. Soletski retired in 1982 and Northwestern Insulation was his last employer.

The law applicable to Soletski's claim for worker's compensation benefits provides that "[i]n the case of occupational disease there shall be no statute of limitations, except that benefits or treatment expense becoming due" after the expiration of a certain number of years "from the date of injury" shall be paid from a work injury supplemental benefit fund rather than by an employer. Sec. 102.17(4), Stats.[2]

[2]Although the limitations period pertaining to injury or death from lung disease or exposure to a toxic substance was expanded from six to twelve years in 1973, sec. 3, ch. 150, Laws of 1973, it is not material which period applies here. As noted below, "date of injury" is a term of art and, if it "occurs after the cessation of all employment that contributed to the disability," the date is the employee's "last day of work for the last employer whose employment caused the disability." Sec. 102.01(2)(g)2, Stats. Thus, the applicable limitations period in this case depends on whether Northwestern Insulation or Industrial Insulation was Soletski's "last employer whose employment caused [his] disability." If

"Date of injury" is defined to mean "[i]n the case of disease, the date of disability or, if that date occurs after the cessation of all employment that contributed to the disability, *the last day of work for the last employer whose employment caused disability."* Sec. 102.01(2)(g)2, Stats. (emphasis added). It is undisputed that Soletski's disability occurred after the periods of employment that exposed him to asbestos fibers and that, therefore, the emphasized portion of sec. 102.01(2)(g)2 applies to his claim.

Testimony on Soletski's claim for benefits was heard by different administrative law judges at two hearings. They determined that Soletski's "last employer whose employment caused disability" was Industrial Insulation. Therefore, since his last employment for that company was more than six years before he made his claim for benefits, his benefits were to be paid out of the supplemental benefit fund.

The State petitioned for review to the Commission and requested that the Commission take "administrative" notice (apparently a doctrine akin to "judicial" notice) of certified copies of documents from the Secretary of State's office and a February 20, 1986 letter from an employee of the Department of Industry, Labor and Human Relations.[3] Northwestern Insu-

Industrial Insulation was Soletski's "last employer whose employment" caused his disability, his "date of injury" would be 1969. Since Soletski filed his claim for benefits more than six years after he last worked for that company in 1969, his claim would be paid out of the supplemental benefit fund. If Northwestern Insulation was Soletski's "last employer whose employment" caused his disability, Soletski's claim would be well within the twelve year period, which started running when he retired from Northwestern Insulation in 1982.

[3]The documents from the Secretary of State's office were certified copies of the following: (1) a certification from the Brown

lation objected to the consideration of this post-hearing material, which was submitted in support of the State's argument that Northwestern Insulation was, in reality, the same company as Northwestern Asbestos. The state contended that Northwestern Insulation was therefore Soletski's "last employer whose employment caused disability." The Commission agreed and set aside the order of the administrative law judges. Its sole analysis on this point was expressed in one sentence: "His last employer was respondent Northwestern Insulation (Northwestern Insulation Company, Inc., formerly known as Northwestern Asbestos and Cork Insulation Company, Inc.) from whom [sic] he retired on February 25, 1982."

II. Judicial review of the Commission's determination is limited by statute. Sec. 102.23(1)(a), Stats.,

County Register of Deeds of receipt on January 9, 1970 of "Restated Articles of Incorporation" "on behalf of" Northwestern Asbestos; (2) a certification by the Secretary of State that the Restated Articles of Incorporation of Northwestern Asbestos and name change to Northwestern Insulation were filed on January 7, 1970 (the restated articles noted that Northwestern Insulation was a "successor corporation" to Northwestern Asbestos); (3) a Northwestern Asbestos annual report filed in February 1969; and (4) Northwestern Insulation annual reports filed with the state in May 1970 and March 1971. The letter from the Department of Industry, Labor and Human Relations was dated February 20, 1986 and reported that "the account and account number assigned to the business which was originally owned and operated by Northwestern Asbestos and Cork Insulation, Co. (a corporation) is the same account and account number now assigned to Northwestern Insulation Co., Inc."

Although the documents are not proper matters for judicial notice under Chapter 902 of the Wisconsin Rules of Evidence and were hearsay to boot under Chapter 908, hearings in contested cases before administrative agencies are not governed by the rules of evidence. Sec. 227.45(1), Stats.

provides that the "findings of fact made by the commission acting within its powers shall, in the absence of fraud, be conclusive." Subsection (1)(e) further provides that a reviewing court may set aside a commission's order or award only if it concludes:

1. That the commission acted without or in excess of its powers.

2. That the order or award was procured by fraud.

3. That the findings of fact by the commission do not support the order or award.

Additionally, the court may set aside the Commission's order and award and remand the case if it determines that "the commission's order or award depends on any material and controverted finding of fact that is not supported by credible and substantial evidence." Sec. 102.23(6), Stats., *Wehr Steel Co. v. DILHR,* 106 Wis. 2d 111, 117, 315 N.W.2d 357, 360–61 (1982).

The critical issue in this case is whether the evidence supports the Commission's finding that Northwestern Insulation was Soletski's last employer whose employment caused his disability. Northwestern Insulation contends that Industrial Insulation fits that definition because it was Soletski's employer when he was last exposed to asbestos fibers. The Commission, on the other hand, contends that although Soletski was last exposed to asbestos when he worked for Industrial Insulation, he was exposed to asbestos previously while working for Northwestern Asbestos, and that Northwestern Insulation is the same company as Northwestern Asbestos. Therefore, the Commission argues, since Northwestern Insula-

tion was Soletski's last employer it—not Industrial Insulation—was the "last employer whose employment caused [his] disability." Sec. 102.01(2)(g)2, Stats.

Although statutory interpretation is subject to independent appellate review, courts, appropriately, give consideration to an interpretation of a statute by its enforcing administrative agency. *Larson v. DILHR,* 76 Wis. 2d 595, 603, 252 N.W.2d 33, 36–37 (1977). The agency's interpretation should also be upheld when it is consistent with a statute's unambiguous language because that language is the best indication of legislative intent. *See Marshall-Wisconsin Co. v. Juneau Square Corp.,* 139 Wis. 2d 112, 133, 406 N.W.2d 764, 772 (1987).

Sections 102.03 and 102.01(2)(g)2, Stats., place liability for worker's compensation, payable as the result of disease that causes disability, on the "last employer whose employment caused disability." Implementation of that phrase here requires a three-step analysis. First, we must determine which of Soletski's many periods of employment caused his disability. Then, we must determine who his employers were during those periods. Finally, we must determine which of those employers "whose employment caused [Soletski's] disability" was his "last employer." Sec. 102.01(2)(g)2, Stats. This analysis is consistent with the Commission's interpretation of the statute.

All the parties agree that Soletski was exposed to asbestos in 1962 and in 1967 while working for Northwestern Asbestos and again in 1969 when he worked for Industrial Insulation and that those exposures caused his disability. Soletski was not exposed to asbestos after 1973. Therefore, of the two employers whose employment caused his disability, Industrial

Insulation and Northwestern Asbestos, Industrial Insulation was Soletski's last employer. However, Soletski also worked for Northwestern Insulation in 1975, 1980, 1981, and in 1982, when he retired. If "Northwestern Insulation" is but another name for "Northwestern Asbestos" and the two companies are the same (as the Commission determined), then Northwestern Insulation would be Soletski's "last employer whose employment caused [his] disability."

In assessing whether there is any "credible and substantial evidence" to support the Commission's conclusion that Northwestern Insulation was Soletski's "last employer whose employment caused [his] disability," we must first determine whether the Commission properly considered the material that was submitted to it on review from the administrative law judges' decision. If it did not, then we must determine whether the record before the administrative law judges supports the Commission's order.

Section 102.18(3), Stats. governs the Commission's authority in matters on review from an administrative law judge:

> The commission shall either affirm, reverse, set aside or modify the findings or order in whole or in part, or direct the taking of additional evidence. This action shall be based on a review of the evidence submitted.

This statute prevents the Commission from considering on review any evidence not considered by the administrative law judge unless the parties are permitted to offer rebuttal evidence at the "taking of additional evidence." *See Joseph Schlitz Brewing Co. v. DILHR,* 67 Wis. 2d 185, 192–93, 226 N.W.2d 492, 495–96 (1975). Since there was no "taking of addition-

al evidence," the Commission was limited to the record before the administrative law judges. *Ibid.*

We must therefore examine the record before the administrative law judges to determine if there is any "credible and substantial evidence" to support the commission's conclusion that the two companies were the same. The only evidence in the record concerning Northwestern Insulation's corporate history was presented by Theodore Belanger. Belanger testified that he went to work for "Northwestern" "one month after William Sprinkman purchased Northwestern Asbestos & Cork from Donald Underberg." The company's name was changed to Northwestern Insulation in 1972. According to Belanger, the new owners "brought in all new management." When the state's attorney asked him whether, after the new owners purchased the company, "there was basically the same type of work performed ... same type of insulation projects?" Belanger replied "Essentially no." There was no evidence in the record before the administrative law judges from which the Commission could have concluded that the two companies were identical, with only a name change.

Even if the companies are not identical, there are circumstances in which a successor corporation can, contrary to the general rule of non-responsibility, be held to the liabilities of its precedessor. The Wisconsin Supreme Court recently restated the circumstances:

> As a general rule, "a corporation which purchases the assets of another corporation does not succeed to the liabilities of the selling corporation." There are four well recognized exceptions to this general rule:

"(1) when the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) when the transaction amounts to a consolidation or merger of the purchaser and seller corporations; (3) when the purchaser corporation is merely a continuation of the seller corporation; or (4) when the transaction is entered into fraudulently to escape liability for such obligations."

*Fish v. Amsted Indus. Inc.,* 126 Wis. 2d 293, 298, 376 N.W.2d 820, 823 (1985) (quoting from *Leannais v. Cincinnati, Inc.,* 565 F.2d 437, 439 [7th Cir. 1977]). Although this rule is now often advanced in connection with product liability litigation, it has a long and honorable history. *See id.* at 303, 376 N.W.2d at 825. Its application here is consistent with that history. As recounted by *Fish*:

The traditional rule of nonliability of successor corporations and its exceptions were developed prior to the adoption of strict products liability law.

"Courts have come to recognize that the traditional rule of nonliability was developed not in response to the interests of parties to products liability actions, but rather to protect the rights of commercial creditors and dissenting shareholders following corporate acquisitions, as well as to determine successor corporation liability for tax assessments and contractual obligations of the predecessor."

*Ibid.* (quoting from *Ramirez v. Amsted Indus. Inc.,* 431 A.2d 811, 815–16 [N.J. 1981]) (other citations omitted).

The reason for the rule of nonliability is clear. A business should not be liable for acts of another unless

it has assumed that obligation or, as discussed in *Fish*, nonliability would subvert recognized public policy because the two entities are substantially identical or there was a fraudulent attempt to avoid liability. *Id.* at 298, 376 N.W.2d at 823. Simply put, the law functions best when it fixes liability on those causing harm. That is the rationale of the statutory scheme here, which—as seen—places worker's compensation liability under these circumstances on the "last employer whose employment caused the disability."

There is no evidence in the record before the administrative law judges on the nature of the transaction between the old and new owners of "Northwestern Asbestos." Additionally, there is no evidence that any of the exceptions allowing for successor corporate liability recognized by *Fish* were met.

The commission's order must be set aside. The judgment of the circuit court is reversed with directions that the Commission's order be set aside and remanded to the Commission for further proceedings in accordance with secs. 102.23(6), 102.24(1), Stats., and *Schlitz Brewing Co.,* 67 Wis. 2d at 193–94, 226 N.W.2d at 496.

*By the Court.*—Judgment reversed with directions.