AMSOIL, INC. and Travelers Insurance Company, Plaintiffs-Respondents, †

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Appellant,

Robynn A. SILBERG, Defendant-Co-Appellant.

Court of Appeals

*No. 92-0978. Oral Argument November 25, 1992.—Decided December 8, 1992.*

(Also reported in — N.W.2d —.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and on the briefs of and orally argued by *Richard Briles Moriarty,* assistant attorney general.

On behalf of the defendant-co-appellant, the cause was submitted on the brief of and orally argued by *James L. Cirilli* of Superior.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of and orally argued by *Fred A. Simon,* of Minneapolis, Minnesota.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   The Labor and Industry Review Commission (LIRC) and Robynn Silberg appeal a judgment reversing LIRC's decision awarding worker's compensation (WC) benefits to Silberg. LIRC and Silberg contend the trial court erred by concluding that LIRC exceeded its power under ch. 102, Stats., by taking administrative notice of its files in Silberg's unemployment compensation (UC) hearing and by reversing LIRC's credibility determinations. They argue that (1) LIRC's interpretation that the authority to take administrative notice is implicit in ch. 102 was reasonable and was entitled to great weight and (2) LIRC's credibility determinations are conclusive and the trial court cannot substitute its judgment for that of LIRC. Although we conclude that LIRC does not have statutory authority to take administrative notice of its own different, though related, files, because the error is harmless we reverse the trial court's judgment.

Amsoil, Inc., a synthetic lubricants manufacturer, employed Silberg for four years as a clerk typist. Silberg allegedly injured herself while working at Amsoil on March 3, 1987. She claimed that she slipped on a watery substance in Amsoil's break room and twisted her right knee, but did not fall to the floor. Silberg did not report the injury to her supervisor on the date it occurred and continued to work that day. The next day, Silberg arrived late for work because of pain and stiffness in her knee; she explained the reason for her tardiness and reported her injury that day.

Because her injury required surgery and other medical treatment, Silberg applied for WC benefits. Her employment was terminated in early July 1988, and she filed a claim for UC benefits. Amsoil stated it had dis-

charged Silberg for misconduct, contending that she had falsely claimed that her injury occurred at Amsoil and thus falsified company reports.

The UC claim was heard before hearing examiner Gottfredsen. Silberg's testimony concerning her injury was contradicted by Robert Wilkinson. Wilkinson, a former employe at Amsoil's California plant, testified that during a telephone conversation with Silberg in mid-March 1987, she told him that her injury occurred at her grandmother's house and not at Amsoil, and that she did not have insurance. Silberg denied making these statements. Wilkinson further testified that he was receiving WC benefits from Amsoil for an injury he had received on the job and that his wife was currently employed by Amsoil.

Gottfredsen concluded that Amsoil failed to prove that Silberg had falsified company reports when she claimed that her injury occurred at the plant. Gottfredsen's conclusion was based in part upon his determination that Silberg's testimony was more credible than Wilkinson's, and that Amsoil never told Silberg why it terminated her. Therefore, Gottfredsen ruled, Silberg had not been discharged for misconduct and was eligible for UC benefits.

Because Amsoil appealed Gottfredsen's ruling, LIRC consulted with Gottfredsen concerning Wilkinson's and Silberg's credibility during its review of the UC hearing evidence. Gottfredsen indicated that he felt Wilkinson's testimony, unlike Silberg's, was "wooden" and "mechanical." LIRC also believed Silberg was unlikely to have admitted to Wilkinson that she had fraudulently filed a WC claim after submitting the accident report. Finally, LIRC found that "[t]he circumstances surrounding Wilkinson's presence in [Amsoil's] Sacramento facility and his [announcement] months later of [Silberg's]

159

alleged fraud . . . are themselves questionable." LIRC therefore adopted Gottfredsen's ruling. Amsoil did not request judicial review of this ruling.

Hearing examiner Ronald Ryan conducted hearings on Silberg's WC claim. The portion of the UC hearing transcript containing Wilkinson's testimony was put into evidence. Wilkinson also testified at the WC hearing, and his testimony can be summarized as follows: Wilkinson worked at Amsoil's Sacramento plant until January 6, 1987, when he was injured at the plant. After January 6, his wife took over his job, and he still went to Amsoil on a daily basis, although he was no longer employed and was receiving WC benefits. In early March 1987, he went to Amsoil and spoke to Silberg on the telephone. Silberg told him about her injury, and that it had not occurred at Amsoil. He remembered that she told him she injured herself on the back steps at her grandparents' house, and not her grandmother's, as he had testified at the UC hearing. During this conversation Silberg also asked him the amount of the WC benefits he received in California. In December 1987, he heard that Silberg was suing Amsoil, and told Amsoil's warehouse foreman that Silberg had told him she had not injured herself at Amsoil. He also remembered Silberg telling him during 1987 that she had gone snorkeling and hiking in Florida.

Silberg's testimony at the WC hearing can be summarized as follows: On March 3, 1987, she arrived at Amsoil and punched in at 7:44 a.m. She could not recall whether she went to her desk first or to the break room first, but she remembered going to the break room before 8 a.m. to talk with other employes. She went back to her desk at 8 a.m., and realized she had not gotten her coffee. At 8:05, she returned to the break room with two empty cups to get coffee for herself and her supervisor, Dean

Alexander. She remembered asking Alexander if he wanted coffee, but did not recall his response. When she stepped into the break room doorway, she slipped, twisting her knee, and caught herself on the door so that she did not fall to the floor. She noticed a small area of shiny wetness on the floor with a black shoe mark on the edge of the wetness. Although her knee was sore, she continued to work that day and did not report the injury.

The next day, Silberg reported to work late because her knee was stiff and sore. She reported her injury that day and went to see a doctor the following week. She missed several weeks of work due to knee surgery and recovery. When asked if she had her coffee pot on the premises before her injury, Silberg answered that she could not recall, but that she knew she had it after she returned to work in May following her knee surgery. Silberg again denied telling Wilkinson that she had not injured herself at Amsoil. She stated that she had been estranged from her grandmother for three years and, in any event, there were no back steps at her grandmother's house. Finally, contrary to Wilkinson's testimony, she stated that she had never gone snorkeling in her life.

Ryan found that Wilkinson's testimony was "forthright and compelling," and therefore credible, "in sharp contrast to [Silberg's] unsatisfactory manner of testifying, demeanor, hesitancies and inflections . . .." Ryan therefore concluded that Silberg had failed to prove that her injury occurred at Amsoil while in the course of her employment and denied WC benefits.

Silberg appealed Ryan's ruling to LIRC, which "reviewed the entire record" and "conferred with [Ryan] to obtain his impressions as to the credibility of persons who gave testimony . . .." LIRC determined that Ryan had based his adverse credibility evaluation "largely on matters that he felt [Silberg] should have unhesitatingly

recalled with great precision and because he did not consider similar indications of lack of precision on the part of Wilkinson to be significant." LIRC took "administrative notice" of the entire UC record to aid in its decision. In its October 22, 1990, decision, LIRC refused to accept Ryan's credibility evaluations and ruled that Silberg was entitled to WC benefits for her injury.

Amsoil and Travelers Insurance sought judicial review of LIRC's WC order. The trial court remanded the matter to LIRC for reconsideration of its decision upon request of the parties. Upon remand, LIRC notified all parties that it intended to take notice of the following documents from Silberg's UC hearing: the adjudicator's preliminary report, Amsoil's request for a work record form, the initial determination of ineligibility, Silberg's request for a hearing before the hearing examiner, the notice of hearing, Gottfredsen's decision, Amsoil's petition for LIRC review and LIRC's decision. The parties were given thirty days to file comments/arguments regarding LIRC's taking notice of these documents. Amsoil filed an objection to LIRC's taking notice of these documents.

After reviewing the record and the above-mentioned documents, LIRC affirmed its earlier decision. In its memorandum opinion, LIRC stated that it believed Silberg over Wilkinson for many reasons:

> [Silberg's] testimony is credible and internally consistent.. . . Wilkinson was, at the time of the worker's compensation hearing, dependent upon receipt of worker's compensation benefits from [Amsoil], and his wife was also employed by Amsoil. His claim [at the WC hearing] that he did not know who had paid for his flight out from California in order to testify is difficult to believe and seems disingenuous, especially when compared to his direct con-

162

cession [at the UC hearing], that Amsoil had flown him out to testify. There were also troubling inconsistencies in his testimony. At the unemployment compensation hearing he testified that the alleged conversation [with Silberg] took place in mid-March, while in the worker's compensation hearing he testified first that it occurred "on or about March 3". . .. Whereas at the unemployment compensation hearing Wilkinson claimed that [Silberg] told him she had hurt herself at her grandmother's house, at the worker's compensation hearing he was indefinite on whether she said it was her grandmother's place or her grandfather's or grandparents'. . . . At the worker's compensation hearing Wilkinson testified for the first time that [Silberg] allegedly told him that she had hurt herself on certain "back steps". . . . At the unemployment compensation hearing he claimed that [Silberg] told him that she had no insurance, while at the worker's compensation hearing he claimed that [she] told him she did not have enough insurance to cover the injury. (Emphasis in original.)

LIRC further discounted Ryan's credibility assessment because he applied different standards when he evaluated the significance of the imprecision in Silberg's and Wilkinson's testimony. LIRC stated that it arrived at its credibility determination independently of Gottfredsen's and Ryan's conclusions, based on its own comparison of the testimony and did not

rely directly on the opinions of the unemployment compensation Administrative Law Judge in deciding . . . that [Silberg] was most credible . . .. The Commission's knowledge of the credibility assessment of the unemployment compensation Administrative Law Judge . . . has simply been one factor in the Commission's decision not to extend any particular deference to [Ryan's assessment] . . ..

Amsoil and Travelers again appealed to the trial court for judicial review of LIRC's determination. The court reversed LIRC's decision, concluding that LIRC exceeded its authority under ch. 102, Stats., when it took administrative notice of its UC file.

The court based its conclusion on the following: (1) The issues and burden of proof in the WC hearing are different from those in the UC hearing; (2) because Silberg introduced a portion of the UC hearing at the WC hearing, she would not normally be allowed to introduce other portions of the UC record and LIRC's use of these materials indirectly gave her a right that she would not have in a post-hearing request; (3) Gottfredsen's subjective opinion of credibility is not factual evidence, but is an outside administrative decision that was received and considered without giving Amsoil the opportunity to argue admissibility before Ryan; and (4) it was patently unfair to Amsoil to decide the case upon the basis of Gottfredsen's determination of credibility, after Amsoil had spent two days examining witnesses and introducing evidence before Ryan.

■

We review LIRC's decision under the same standard of review as the trial court. *Nelson v. LIRC*, 123 Wis. 2d 221, 224, 365 N.W.2d 629, 630 (Ct. App. 1985). In the absence of fraud or lack of support by substantial and credible evidence, LIRC's factual findings are binding on this court. Section 102.23(1)(a) and (6), Stats. In assessing whether there is any "substantial and credible evidence" to support LIRC's conclusion that Silberg's injury occurred at Amsoil, we must first determine whether LIRC properly considered the material submitted to it from the hearing examiner's decision. *Northwestern Insulation v. LIRC*, 147 Wis. 2d 72, 79–80, 432 N.W.2d 620, 624–25 (Ct. App. 1988).

LIRC possesses only the powers the legislature expressly or implicitly grants to it. *Brunette v. Brunette*, 171 Wis. 366, 372, 177 N.W. 593, 595 (1920). While statutory interpretation is a question of law that we review de novo, an agency's construction of a statute is ordinarily entitled to deference where the agency has special expertise and experience interpreting the statute. *DILHR v. LIRC*, 161 Wis. 2d 231, 245-46, 467 N.W.2d 545, 550 (1991).

However, novel questions of statutory interpretation that the agency has not previously addressed are reviewed without deference. *Local No. 695 v. LIRC*, 154 Wis. 2d 75, 84, 452 N.W.2d 368, 372 (1990). "[S]pecial deference to be afforded an agency is the result of a course of uniform interpretation over a period of time." *Id.* Moreover, an agency's decision dealing with the scope of its own power is not binding on this court. *Wisconsin's Environmental Decade v. PSC*, 81 Wis. 2d 344, 351, 260 N.W.2d 712, 716 (1978). Because this is a novel issue that involves an agency defining its own power, we owe no deference to LIRC's interpretation of its power under sec. 102.18, Stats.

LIRC argues that the power to take administrative notice of its records of related claims before it is implicit in sec. 102.18(3), Stats., which provides in part:

> A party in interest may petition the commission for review of an examiner's decision awarding or denying compensation . . . .. The commission shall either affirm, reverse, set aside or modify the findings or order in whole or in part, *or direct the taking of additional evidence.* This action shall be based on a review of the evidence submitted. (Emphasis added.)

LIRC likens administrative notice to judicial notice taken under sec. 902.01, Stats. We have previously rejected this argument.

In *Northwestern Insulation*, we rejected LIRC's argument that sec. 102.18(3), Stats., authorized it to take administrative notice of certified documents from the secretary of state's office and a letter from a DILHR employee. *Id.* at 75, 79, 432 N.W.2d at 623, 625. LIRC attempts to use the same argument we rejected in *Northwestern Insulation* to support its contention that it has authority to take administrative notice of different, though related, files in its possession. LIRC argues that because it took notice of files in its own possession, *Northwestern Insulation* is inapposite. We disagree and conclude that, while LIRC may have authority to take notice of facts such as rules and regulations, it does not possess implied authority to take administrative notice of related though different files.

In *Northwestern Insulation*, 147 Wis. 2d at 79, 432 N.W.2d at 625, we held that sec. 102.18(3), Stats., "prevents the Commission from considering on review *any* evidence not considered by the administrative law judge unless the parties are permitted to offer rebuttal evidence at the 'taking of additional evidence.'" (Emphasis supplied.) A taking of additional evidence contemplates an additional hearing at which all parties are permitted to offer, examine and object to additional evidence before LIRC. *See Jos. Schlitz Brewing Co. v. DILHR*, 67 Wis. 2d 185, 193, 226 N.W.2d 492, 495–96 (1975). At oral argument, LIRC conceded that it did not direct the taking of additional evidence by taking administrative notice of Silberg's UC files. Although Amsoil and Travelers were allowed to "comment on" LIRC's proposal to

take administrative notice of the file, they were not given the opportunity to offer rebuttal evidence.

Further, the legislature did not expressly grant LIRC the power to take administrative notice of its own files. LIRC's argument that the power is implied is unpersuasive when the legislature is aware of the concept of administrative notice but has declined to specifically grant the power. Therefore, we conclude that LIRC was limited to the record before the hearing examiner. *Northwestern Insulation*, 147 Wis. 2d at 79, 432 N.W.2d at 625. Our inquiry, however, does not end here.

Section 805.18(2), Stats., provides that there shall be no relief on appeal "unless in the opinion of the court . . . after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the [complaining] party . . .." An error is prejudicial if we conclude that, but for the error, there probably would have been a different result. *Bychinski v. Sentry Ins.*, 144 Wis. 2d 17, 20, 423 N.W.2d 178, 179 (Ct. App. 1988). Thus, we must next determine whether LIRC's credibility determination, which normally must be upheld, was tainted by its unlawful act of considering materials outside of the WC record without directing a taking of additional evidence. We conclude that it was not.

We cannot substitute our judgment for that of LIRC concerning witness credibility or the weight to be accorded to the evidence supporting any finding of fact. *West Bend Co. v. LIRC*, 149 Wis. 2d 110, 118, 438 N.W.2d 823, 827 (1989). As long as there is any credible evidence in the WC record supporting LIRC's finding that Wilkinson is incredible, we will uphold that finding

167

even if, in our judgment, it is contrary to the great weight and clear preponderance of the evidence. *Id.* We conclude that there is credible evidence in the WC record in support of LIRC's finding that Wilkinson was incredible and that Silberg was credible.

LIRC stated in its opinion that it independently examined the WC record and made its own credibility determinations, as it is statutorily required to do. LIRC also stated that it did not adopt the UC hearing examiner's conclusion; rather, it noted the conclusion and decided to scrutinize the WC record more closely. LIRC's knowledge of the UC record and of the UC hearing examiner's contrary credibility assessment was only "one factor in [its] decision not to extend any particular deference to the assessment of the worker's compensation Administrative Law Judge." LIRC made its credibility determination independently of the UC files not before the WC hearing examiner and the opinions of either the UC or the WC hearing examiners. LIRC examined the record and made its determinations based upon the record properly before it.

The materials that were used to determine credibility had already been properly received into evidence before the WC hearing examiner and were not part of the materials of which LIRC took administrative notice. Because the transcript was in evidence at the WC hearing, LIRC could properly consider it. *Northwestern Insulation*, 147 Wis. 2d at 79, 432 N.W.2d at 625. LIRC conducted an independent evaluation and comparison of Wilkinson's testimony at the UC hearing and at the WC hearing and found that Wilkinson's testimony concerning the same subjects at the two hearings was often inconsistent. LIRC also noted that at the WC hearing, Wilkinson did not forthrightly answer some questions

about his relationship with Amsoil, including whether Amsoil had paid for his flight to Wisconsin for the hearing. There is evidence in the WC record that supports LIRC's determination that Wilkinson is incredible and Silberg is credible and that determination is binding on this court. Because LIRC made its credibility determination based upon the evidence properly before it and did not rely on the documents of which it took administrative notice, we conclude that LIRC's error of taking administrative notice of its file was harmless.

*By the Court.*—Judgment reversed.