IGL-WISCONSIN AWNING, TENT & TRAILER CO., INC., a
Wisconsin corporation, Plaintiff-Respondent, †

v.

MILWAUKEE AIR & WATER SHOW, INC., a Wisconsin
corporation, and Bernard J. Beemster, Defendants-
Appellants.

Court of Appeals

*No. 93–1598. Oral argument May 26, 1994.—Decided June 14,
1994.*

(Also reported in 520 N.W.2d 279.)

†Petition to review denied.

866

On behalf of the defendants-appellants, the cause was submitted on the briefs of *James G. Allison* of

*Whyte Hirschboeck Dudek S.C.*, of Milwaukee. There was oral argument by *James G. Allison*.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Richard L. Voss* of *I.B. Shapiro, S.C.*, of Milwaukee. There was oral argument by *Richard L. Voss*.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J. Greater Milwaukee Air and Water Show, Inc., and Bernard J. Beemster appeal from a judgment entered against them in favor of IGL-Wisconsin Awning, Tent and Trailer Co., Inc., and from the trial court's order denying summary judgment to Greater Milwaukee. Greater Milwaukee and Beemster also challenge the trial court's taxation of costs.

In 1990, Wisconsin Awning rented tents and other equipment to Milwaukee Unlimited, Ltd., a nonprofit corporation organized under chapter 181, STATS ., in connection with Milwaukee Unlimited's production of a hydroplane boat race at the Milwaukee lakefront that summer. Wisconsin Awning's bill was never paid, and, on March 11, 1991, Wisconsin Awning obtained a default judgment against Milwaukee Unlimited for $35,486.63, plus costs. Subsequently, Milwaukee Unlimited was dissolved, and Greater Milwaukee, also a nonprofit corporation organized under chapter 181, STATS., was formed by, among others, Beemster, who had been a director and vice-president of Milwaukee Unlimited. Beemster was also a director of Greater Milwaukee. Greater Milwaukee produced a hydroplane boat race at the Milwaukee lakefront in the summer of 1991.

Alleging that Greater Milwaukee was but a continuation of Milwaukee Unlimited, Wisconsin Awning sued Greater Milwaukee and Beemster to recover on the judgment against Milwaukee Unlimited. After a bench trial, the trial court held that Greater Milwaukee and Beemster were liable for Milwaukee Unlimited's debt to Wisconsin Awning. Our review of these legal issues is *de novo*. *See Lewandowski v. State*, 140 Wis. 2d 405, 408, 411 N.W.2d 146, 148 (Ct. App. 1987) (appellate courts generally review legal issues *de novo*). We affirm in part, and reverse in part.

1. *Successor corporate liability*.

It is black-letter law that a new corporation is liable for the debts of an old corporation if the succession is just one of form so that the new corporation "is in reality, however it may be in law, a mere continuation of the old corporation." 15 FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 7329 at 720 (1990). Thus, "although technically, as a matter of law, a new corporation may be created, yet, if the old corporation ceases to exist, and all its assets and franchises are acquired by the new, which is in reality a mere continuation of the old . . . the new corporation is deemed to have impliedly assumed, and is liable upon, all the obligations of the old." *Ibid*. Wisconsin law is similar. *See Fish v. Amsted Industries, Inc.*, 126 Wis. 2d 293, 298, 376 N.W.2d 820, 823 (1985) (corporation that purchases assets of another corporation is responsible for the other corporation's liabilities if " 'the purchaser corporation is merely a continuation of the seller corporation' or 'when the transaction is entered into fraudulently to escape liability for such obligations' ")

869

(citation omitted). These principles, designed to prevent avoidance of legitimate obligations, *Northwestern Insulation v. LIRC*, 147 Wis. 2d 72, 81-82, 432 N.W.2d 620, 626 (Ct. App. 1988), also apply to nonprofit corporations, *see Roddy v. Norco Local 4-750*, 359 So. 2d 957, 960 (La. 1978) (absorption by union local of another union made union local liable for the other union's debts); *Council of Jewish Women v. Sisters of Charity*, 513 P.2d 1183, 1186 (Or. 1973) (enforcing contract between the Council and the predecessor of the Sisters of Charity).

■ Following a bench trial, the trial court here found that: "there was an identity of management and control" of the two corporations; Greater Milwaukee used Milwaukee Unlimited's "equipment and information" in producing the 1991 race; Greater Milwaukee used Milwaukee Unlimited's telephone number; and Greater Milwaukee "was located in the suite next to" Milwaukee Unlimited's former offices. Additionally, referring to what it characterized as the "transformation" from Milwaukee Unlimited to Greater Milwaukee, the trial court also found: "For all intents and purposes, only the name of the business changed. The identical organization in substance continued to operate with the same persons, equipment, files, and purpose of putting on the 1991 boat races." These findings are not "clearly erroneous," *see* RULE 805.17(2), STATS. (trial court's findings of fact will not be overturned unless they are clearly erroneous), and support the trial court's conclusion that Greater Milwaukee was but a continuation of Milwaukee Unlimited, and therefore liable for Milwaukee Unlimited's debt to Wisconsin Awning. We affirm the trial court on this issue.

870

## 2. *Beemster's immunity from suit.*

The trial court pierced the corporate veil of both Milwaukee Unlimited and Greater Milwaukee, and found Beemster liable for the corporations' debt to Wisconsin Awning. *See Consumer's Co-op of Walworth County v. Olsen,* 142 Wis. 2d 465, 419 N.W.2d 211 (1988) (analyzing concept of piercing the corporate veil). Beemster argues that he was immune from suit under both §§ 181.287 and 181.297, STATS. We agree.

Both Greater Milwaukee and Milwaukee Unlimited were non-stock corporations organized under chapter 181, STATS. Section 181.287 grants immunity from suit by creditors to officers and directors of chapter 181 corporations.[1] Section 181.297 provides similar immunity to one who volunteers his or her services for

---

[1] Section 181.287, STATS., provides:

**Limited liability of directors and officers. (1)** Except as provided in subs. (2) and (3), a director or officer is not liable to the corporation, its members or creditors, or any person asserting rights on behalf of the corporation, its members or creditors, or any other person, for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director or officer, unless the person asserting liability proves that the breach or failure to perform constitutes any of the following:

(a) A wilful failure to deal fairly with the corporation or its members in connection with a matter in which the director or officer has a material conflict of interest.

(b) A violation of criminal law, unless the director or officer had reasonable cause to believe his or her conduct was lawful or no reasonable cause to believe his or her conduct was unlawful.

(c) A transaction from which the director or officer derived an improper personal profit.

(d) Wilful misconduct.

**(2)** Except as provided in sub. (3), this section does not apply to any of the following:

(a) A civil or criminal proceeding brought by or on behalf of any governmental unit, authority or agency.

(b)   A proceeding brought by any person for a violation of state or federal law where the proceeding is brought pursuant to an express private right of action created by state or federal statute.

(c)   The liability of a director under s. 181.29.

**(3)**   Subsection (2) (a) and (b) does not apply to a proceeding brought by a governmental unit, authority or agency in its capacity as a private party or contractor.

[2] Section 181.297, STATS., provides:

**Limited liability of volunteers.  (1)**   DEFINITION. In this section, "volunteer" means a natural person, other than an employe [*sic*] of the corporation, who provides services to or on behalf of the *corporation without compensation.*

**(2)**   IMMUNITY. Except as provided in sub. (3), a volunteer is not liable to any person for damages, settlements, fees, fines, penalties or other monetary liabilities arising from any act or omission as a volunteer, unless the person asserting liability proves that the act or omission constitutes any of the following:

(a)   A violation of *criminal law, unless the volunteer had rea-*sonable cause to believe his or her conduct was lawful or no reasonable cause to believe his or her conduct was unlawful.

(b)   Wilful misconduct.

(c)   If the volunteer is a director or officer of the corporation, an act or omission within the scope of the volunteer's duties as a director or officer.

(d)   An act or omission for which the volunteer received compensation or any thing of substantial value in lieu of compensation.

**(3)**   EXCEPTIONS. (a)   Except as provided in par. (b), this section does not apply to any of the following:

1.   A civil or criminal proceeding brought by or on behalf of any governmental unit, authority or agency.

2.   A proceeding brought by any person for a violation of state or federal law where the proceeding is brought pursuant to an express private right of action created by state or federal statute.

3.   Claims arising from the negligent operation of an automobile, truck, train, airplane or other vehicle by a volunteer.

4.   A proceeding against a volunteer who is licensed, certified, permitted or registered under state law and which is based upon an act or omission within the scope of practice under the volunteer's license, certificate, permit or registration.

872

Milwaukee Unlimited. Further, Wisconsin Awning does not contend that Beemster was not a "volunteer" *vis a vis* both corporations. *See* § 181.297(1), STATS. (A " 'volunteer' means a natural person, other than an employe [*sic*] of the corporation, who provides services to or on behalf of the corporation without compensation."). Nevertheless, Wisconsin Awning contends that Beemster is liable for the judgment against Milwaukee Unlimited under the rationale of *Benjamin Plumbing, Inc. v. Barnes*, 162 Wis. 2d 837, 470 N.W.2d 888 (1991), because the trial court found that Beemster's role in forming Greater Milwaukee was " 'a dishonest and unjust act' in contravention of [Wisconsin Awning]'s legal rights, i.e., execution of the judgement [*sic*]" against Milwaukee Unlimited, (quoting *Consumer's Co-op*, 142 Wis. 2d at 484, 419 N.W.2d at 217-218, which, in turn, quoted 1 FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 43.10 at 490 (1983)), and was "dishonest manipulation in contravention" of Wisconsin Awning's "legal rights."

*Benjamin Plumbing* held that a director of a non-profit corporation organized under chapter 181, STATS., was liable to a creditor providing goods and services to the corporation at the behest of and pursuant to a contract over the signature of the director, when the director did not disclose that the entity for which he was acting was a corporation. *Id.*, 162 Wis. 2d at 842-843, 470 N.W.2d at 890-891. The supreme court reasoned that the director was acting as the agent for a partially disclosed principal, because "Benjamin

5. Proceedings based upon a cause of action for which the volunteer is immune from liability under s. 29.59 (7), 146.31 (2) and (3), 146.37, 895.44, 895.48, 895.482, 895.51 or 895.52.

(b) Paragraph (a) 1 and 2 does not apply to a proceeding brought by or on behalf of a governmental unit, authority or agency in its capacity as a contractor.

Plumbing had neither actual nor constructive notice of the corporate identity of the principal." *Id.*, 162 Wis. 2d at 853, 470 N.W.2d at 895. Thus, the director was not entitled to immunity under § 181.287, STATS., because his acts "as an agent for a partially disclosed principal" did not relate "solely to his status as a director" of the corporation, as required by § 181.287(1), STATS. *Benjamin Plumbing*, 162 Wis. 2d at 857-860, 470 N.W.2d at 897.

*Benjamin Plumbing* does not apply here—the corporate status of Milwaukee Unlimited was fully disclosed to Wisconsin Awning, and Beemster, unlike the director in *Benjamin Plumbing*, did not sign the contract between the corporation and the creditor. As Greater Milwaukee cogently puts in its brief before this court: "Beemster's alleged liability arises out of his actions as a director of [Milwaukee Unlimited], i.e., deciding that [Milwaukee Unlimited] should cease operation, or his actions as a director of [Greater Milwaukee], i.e., organizing that corporation. Only a director could have taken those actions and therefore Beemster's liability arises out of his status as a director." He is thus immune under §§ 181.287 and 181.297, STATS ., unless the "wilful misconduct" exceptions to §§ 181.287 and 181.297 apply. *See* §§ 181.287(1)(d) and 181.297(2)(b), STATS.[3]

---

[3] Although Wisconsin Awning disclaimed any intent before the trial court to rely on the "wilful misconduct" exception to the immunity granted by § 181.287, STATS., and does not, essentially, argue the point on appeal, we discuss the issue nevertheless because we must affirm if the trial court reached the right result for the wrong reason. *See State v. Holt*, 128 Wis. 2d 110, 124, 382 N.W.2d 679, 687 (Ct. App. 1985).

■

The phrase "wilful misconduct" is not defined in either § 181.287(1)(d), STATS., or § 181.297(2)(b), STATS.[4] Whether actions constitute "wilful misconduct" so as to render inapplicable the immunity granted by §§ 181.287 and 181.297, STATS., is a question of law that we determine *de novo. See Lewandowski,* 140 Wis. 2d at 408, 411 N.W.2d at 148.

■

The trial court based its conclusions that Beemster's conduct was "dishonest," "unjust," and "manipulat[ive]" in the context of its decision whether to pierce the corporate veil. A creditor's attempt to impose personal liability on a corporate director or officer for the corporation's debt "resulting solely from his or her status as a director or officer," § 181.287, STATS., however, does not encounter the immunity interposed by this provision unless the corporate veil is first pierced. This requires proof of, among other things, a "dishonest and unjust act in contravention of [the] plaintiff's legal rights." *Consumer's Co-op,* 142 Wis. 2d at 484-485, 419 N.W.2d at 217-218.

■

If the immunity granted by § 181.287, STATS., could be circumvented by a showing sufficient to pierce the corporate veil, the "wilful misconduct" exception in

---

[4] It is also not defined in § 180.0828(1)(d), STATS., which grants immunity to directors of business corporations against claims by "the corporation, its shareholders, or any person asserting rights on behalf of the corporation or its shareholders, for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director," unless the "the breach or failure to perform constitutes . . . [w]ilful misconduct."

subsection (1)(d) would be rendered superfluous, and the immunity would be illusory, thus violating one of the fundamental tenets of statutory interpretation, *see Benjamin Plumbing*, 162 Wis. 2d at 856, 470 N.W.2d at 896; *see also Markham v. Cabell*, 326 U.S. 404, 409 (1945). Accordingly, to bypass § 181.287 immunity, a creditor must show something other than the "dishonest and unjust act in contravention of [the] plaintiff's legal rights" necessary to pierce the corporate veil. Given the injunction that cases should be decided on the narrowest possible grounds, *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989), we need not define the precise contours of the "wilful misconduct" exception. In light of the broad policy of protecting those who labor in the vineyards of nonprofit corporations that underlies §§ 181.287 and 181.297, STATS., however, we conclude that, in the context of this case at least, in order to establish "wilful misconduct," as that term is used in § 181.287(1)(d), Wisconsin Awning had to show that Beemster's predominant motive was to prevent it from realizing on a collectable debt.[5]

Wisconsin Awning's proof failed in two respects. First, there is absolutely no evidence to support the trial court's finding that Beemster's role either in the dissolution of Milwaukee Unlimited or the formation of Greater Milwaukee was dishonest. Thus, the trial court's finding in this regard is "clearly erroneous." Second, the trial court did not find, nor could it from the evidence in the record, that Beemster's predominant

[5] We need not decide whether the phrase "wilful misconduct" as used in § 181.297(2)(b), STATS., may, under different circumstances, have a different meaning than it does in § 181.287(1)(d), STATS.

876

motive in organizing Greater Milwaukee was to avoid payment of the debt to Wisconsin Awning. Rather, the overwhelming evidence is to the contrary—Beemster's primary purpose was to be able to stage boat races in the summer of 1991. Thus, there is no evidence in the record that any of the few assets Milwaukee Unlimited had at the time Greater Milwaukee was formed were transferred to Greater Milwaukee in order to cheat Wisconsin Awning. That portion of the judgment imposing liability on Beemster for the judgment against Milwaukee Unlimited is reversed.[6]

3. *Taxation of costs.*

Greater Milwaukee and Beemster contend that the trial court erred by taxing interest to them on Milwaukee Unlimited's debt to Wisconsin Awning at twelve percent interest.[7] We agree.

Section 814.04(4), STATS., permits taxation of interest at the twelve-percent rate "from the time of verdict, decision or report until judgment is entered." A party executing on a judgment is entitled to twelve percent interest on the judgment by virtue of § 815.05(8), STATS. The decision awarding judgment to

---

[6] In view of our conclusion that Beemster is entitled to immunity under §§ 181.287 and 181.297, STATS., we do not address Wisconsin Awning's other assertions of alleged trial-court error in holding Beemster personally liable for the money owed to it by Greater Milwaukee and Milwaukee Unlimited. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

[7] Although as a result of our determination that Beemster is entitled to immunity under §§ 181.287 and 181.297, STATS., this issue is moot as to him, it may be of consequence to Greater Milwaukee.

Wisconsin Awning against Greater Milwaukee was dated April 16, 1993. Before that, Milwaukee Unlimited's debt to Wisconsin Awning was only a liquidated claim insofar as Greater Milwaukee was concerned and was entitled to interest at five percent. *See* § 138.04, STATS.; *Estreen v. Bluhm*, 79 Wis. 2d 142, 158-159, 255 N.W.2d 473, 482 (1977). The taxation of interest on Wisconsin Awning's judgment against Greater Milwaukee must be modified accordingly.

*By the Court.*—Judgment and order affirmed in part, reversed in part, and cause remanded.