Jeanette A. GOETSCH, Plaintiff-Appellant,

v.

STATE of Wisconsin DEPARTMENT OF WORKFORCE DE-
VELOPMENT, Labor and Industry Review Commis-
sion, and Fort James Operating Company,
Defendants-Respondents.

Court of Appeals

*No. 01–2777. Submitted on briefs March 18, 2002.—Decided
April 16, 2002.*

2002 WI App 128

(Also reported in 646 N.W.2d 389.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Roy Traynor* of Wausau.

On behalf of the defendants-respondents, the cause was submitted on the brief of *William Cassel* of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Jeanette Goetsch appeals a judgment affirming the Labor and Industry Review Commission's unemployment insurance decision that she was not entitled to benefits because Fort James Operating Company terminated her for misconduct. Goetsch argues that (1) the trial court should have taken judicial notice of a related worker's compensation decision, (2) the decision in a specific worker's compensation proceeding should take precedence over the decision in a more general unemployment insurance proceeding and (3) the unemployment insurance administrative law judge (ALJ) lacked expertise and subject matter jurisdiction over her claims.

¶ 2. We conclude that worker's compensation and unemployment insurance are independent of one another.[1] We further conclude that no law or facts support the contention that one ALJ was better suited to decide Goetsch's claim than the other, and that substantial evidence supports the commission's unemployment insurance decision. We therefore affirm the judgment.

BACKGROUND

¶ 3. Goetsch worked at Fort James and its predecessors for over fifteen years. In early 1997, she filed a

---

[1] Because worker's compensation and unemployment insurance claims are independent of each other, we need not apply rules of statutory construction to determine which section "trumps" the other. *See Jones v. State*, 226 Wis. 2d 565, 576, 594 N.W.2d 738 (1999).

810

worker's compensation claim for alleged work injuries. After a bifurcated hearing in June 1998 and June 1999, ALJ Janine Smiley issued a decision on July 9, 1999, finding that one of Goetsch's injuries was work related and that the other was not.

¶ 4. On July 16, 1999, Fort James terminated Goetsch's employment for lying at the June 1999 worker's compensation hearing. Goetsch had testified that the alleged injury to her neck occurred while she was working on roll tray machines on Friday, September 20, 1996. However, production records demonstrated that those machines had not been in operation during Goetsch's shift on September 20, 1996, and that she had actually operated a different machine for her entire shift that day.[2] Also, Goetsch told Dr. Tim Jessick on Monday, September 23, 1996, that she awoke the previous morning with neck pain and denied any history of trauma or injury. Goetsch also signed and completed an application for sickness and accident benefits on September 30, 1996, indicating that her neck trouble was not related to her employment. Not

---

[2] At the time, Goetsch was working under a "last chance" agreement she signed with Fort James in October 1998. The agreement resulted from a grievance Goetsch filed during the fall of 1998. She alleged an injury that she said occurred because she was unable to leave her work station for four straight hours. However, a video tape revealed that Goetsch left the plant twice to have a cigarette during that time. Fort James was going to fire Goetsch, but the union intervened and Goetsch and Fort James executed a "Last Chance to Return to Work Agreement." The agreement provided that Goetsch would be suspended without pay for a time, and then subject to termination for any violation of the Personal Conduct Rules outlined in the collective bargaining agreement for a probation period. Therefore, when Goetsch testified falsely at the June 1999 hearing, she violated a rule and was terminated.

811

until sometime early in 1997, after an MRI revealed a cervical disc problem, did Goetsch change her neck claim from a nonwork claim to a work-related claim.

¶ 5. The union contacted Fort James about rehiring Goetsch approximately one month after her discharge. On August 19, 1999, Fort James drafted an offer of reinstatement with stringent conditions as "one final chance" for Goetsch. Goetsch rejected the offer in a written response on the same date.

¶ 6. Goetsch had filed an unemployment insurance claim after her discharge. On November 27, 1999, the Department of Workforce Development issued its initial determination. It found that Fort James discharged Goetsch, but not for misconduct within the meaning of WIS. STAT. § 108.04(5).[3] The department allowed Goetsch's claim for unemployment insurance benefits.

¶ 7. Fort James appealed, and ALJ David Jenkins held a hearing. On June 2, 2000, Jenkins issued a decision reversing the initial determination and finding that Goetsch was required to repay the unemployment benefits she erroneously received. Goetsch filed a petition for review with the commission. On September 13, 2000, the commission issued a decision affirming the Jenkins decision.

¶ 8. Goetsch appealed the commission's decision to the trial court. She tried to supplement the trial court's record with a copy of a worker's compensation decision issued by Smiley on January 12, 2001.[4]

---

[3] All statutory references are to the 1999–2000 Wisconsin Statutes unless otherwise noted.

[4] Smiley's decision was issued in response to Goetsch's worker's compensation claim that Fort James unreasonably discharged her on July 16, 1999, in violation of WIS. STAT.

Smiley's decision made factual findings concerning Goetsch's behavior that were at odds with findings Jenkins made in his June 2, 2000, unemployment insurance decision. The trial court refused to supplement the record and, on July 31, 2001, affirmed the commission's decision. Goetsch now appeals.

STANDARD OF REVIEW

¶ 9. We review the decision of the commission rather than that of the trial court. *Secor v. LIRC*, 2000 WI App 11, ¶ 8, 232 Wis. 2d 519, 606 N.W.2d 175. Whether an action constitutes "misconduct" sufficient to render an employee ineligible for unemployment benefits is a question of law. *Bernhardt v. LIRC*, 207 Wis. 2d 292, 302–03, 558 N.W.2d 874 (Ct. App. 1996). Because the commission has been administering unemployment insurance for many years, and because the legal question of misconduct is intertwined with factual and policy determinations, we give great weight to the commission's legal interpretation. *Charette v. LIRC*, 196 Wis. 2d 956, 960, 540 N.W.2d 239 (Ct. App. 1995).

¶ 10. Further, the interpretation of a statute and its application to a set of facts are questions of law we review de novo. *Reyes v. Greatway Ins. Co.*, 227 Wis. 2d 357, 364–65, 597 N.W.2d 687 (1999). "The purpose of statutory interpretation is to discern the intent of the legislature," and we resort to judicial construction only if the plain language of the statute renders legislative intent ambiguous. *Id.* at 365.

---

§ 102.35(3). Fort James appealed the decision, and it is currently under review by the commission.

DISCUSSION

■■■

¶ 11. Goetsch argues that the trial court should have taken judicial notice of the worker's compensation ALJ decision. We disagree. Unemployment insurance proceedings are statutorily independent of worker's compensation proceedings. WISCONSIN STAT. § 108.101(4) concerning unemployment insurance proceedings provides:

> No finding of fact or law, determination, decision or judgment in any action or administrative or judicial proceeding in law or equity not arising under this chapter made with respect to the rights or liabilities of a party to an action or proceeding under this chapter is binding in an action or proceeding under this chapter.

This statute is unambiguous. *Reyes*, 227 Wis. 2d at 364–65. No ALJ decision made under a chapter other than WIS. STAT. ch. 108 is binding on an unemployment insurance claim. Therefore, a worker's compensation decision does not bind an ALJ hearing an unemployment insurance claim or the commission reviewing it.

■■

¶ 12. Also, we review the commission's decision, not the trial court's. *Secor*, 2000 WI App 11 at ¶ 8. As a result, we are limited to the record before the commission. It was physically and temporally impossible for the commission to take judicial notice of the January 12, 2001, worker's compensation ALJ decision in the course of its review of Goetsch's unemployment insurance claim. The commission issued its decision affirming Jenkins on September 13, 2000, four months before Smiley issued her worker's compensation decision on January 12, 2001.

¶ 13. In *Amsoil, Inc. v. LIRC*, 173 Wis. 2d 154, 166–67, 496 N.W.2d 150 (Ct. App. 1992), we concluded that the commission erred when it took administrative notice of an unemployment insurance file when it was considering a worker's compensation claim for the same employee. The legislature did not, either expressly or implicitly, grant the commission the power to take administrative notice of its own files. *Id.* at 167. The commission is limited to the record before the hearing examiner, and it does not have statutory authority to take administrative notice of its own different, though related, files. *Id.* at 158, 167.

¶ 14. Goetsch also claims that the unemployment insurance ALJ lacked expertise and subject matter jurisdiction. However, there it no support in law or fact for Goetsch's claim that the worker's compensation ALJ had superior expertise to decide Goetsch's "claim." She did not have "a claim." She had two claims.[5]

¶ 15. Here, each ALJ had jurisdiction over the particular claim before him or her. Pursuant to Wis. Stat. § 108.09(3), Jenkins had jurisdiction over the adjudication of Goetsch's unemployment insurance claim. And pursuant to Wis. Stat. § 102.18(1), Smiley had jurisdiction over Goetsch's worker's compensation claims. They are independent and one cannot consider the findings of the other. *See Amsoil*, 173 Wis. 2d at 167.

---

[5] Goetsch's argument rests on nothing more than self-serving characterizations. We will never know if she would have made the opposite arguments if Jenkins had granted her unemployment insurance claim and Smiley had denied her worker's compensation claim.

¶ 16. Further, to the extent that Goetsch may be challenging the sufficiency of the evidence to support the unemployment insurance decision, substantial evidence supports the commission's decision.[6]

*By the Court.*—Judgment affirmed.

---

[6] Both Jenkins and the commission found that Fort James discharged Goetsch for misconduct, as defined by WIS. STAT. § 108.04(5). Sufficient evidence supports those decisions. For example, the commission found that "there were so many contradictions and inconsistencies with the employe's claim . . . that deliberate falsification is the only reasonable explanation for it." We may not substitute our judgment for that of the agency as to the weight and credibility of the evidence on any finding of fact. WIS. STAT. § 227.57(6).