Althea M. KEUP, Plaintiff-Petitioner-Appellant,

v.

WISCONSIN DEPARTMENT OF HEALTH & FAMILY SERVICES, Respondent-Respondent,

Helene NELSON, in her official capacity as Secretary of the Department of Health and Family Services, Defendant-Respondent.

Supreme Court

*No. 02–0456. Oral argument October 13, 2003.—Decided March 4, 2004.*

2004 WI 16

(Also reported in 675 N.W.2d 755.)

For the plaintiff-petitioner-appellant there were briefs by *Carol J. Wessels* and *SeniorLAW Legal Action of Wisconsin, Inc.,* Milwaukee, and oral argument by *Carol J. Wessels.*

For the respondent-respondent and the defendant-respondent the cause was argued by *Bruce A. Olsen,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

An amicus curiae brief was filed by *Mitchell Hagopian,* Madison, on behalf of Wisconsin Coalition for Advocacy, Legal Aid Society of Milwaukee, Elder Law Center of the Coalition of Wisconsin Aging Groups, Employment Resources, Inc., and ABC for Health.

¶ 1. N. PATRICK CROOKS, J. This case is before us on certification from the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (1999–2000).[1] Althea M. Keup (Keup) appeals from an order of the circuit court, which denied Keup's motion for summary judgment, and

---

[1] Wisconsin Stat. § (Rule) 809.61 provides in relevant part: "(Bypass by certification of court of appeals or upon motion of supreme court). The supreme court may take juris-

granted the Department of Health & Family Services' (DHFS) motion for summary judgment. Keup filed a request for a fair hearing with the Division of Hearings and Appeals (Division) to recoup the full amount paid by her as a private pay patient at the nursing home facilities of a medical assistance provider. The Division concluded that it did not have jurisdiction to hear Keup's claim and dismissed her fair hearing request.

¶ 2. Keup then filed an action in Ozaukee County Circuit Court, seeking review of the Division's order dismissing her fair hearing request, and also pleading an independent claim under 42 U.S.C. § 1983 (1999).[2] The circuit court granted DHFS' motion for summary judgment. Keup appealed from the circuit court's grant of summary judgment, and, as noted, the court of appeals then certified this case to us.

¶ 3. First, we address the certified question of whether, after the State has retroactively compensated a medical assistance provider for nursing home services provided to a private pay patient and the provider has reimbursed the patient in the amount of the medical assistance, the patient has a federally protected right to reimbursement from the provider for the amount originally paid by the patient in excess of the medical assistance reimbursement. Second, we address the certified question of whether the Division has jurisdiction, under Wis. Stat. § 49.45(5)(a) (1999–2000),[3] to grant a

diction of an appeal or other proceeding in the court of appeals upon certification by the court of appeals or upon the supreme court's own motion."

[2] Unless otherwise indicated, all references to United States Code are to the 1999 edition.

[3] Unless otherwise indicated, all references to Wisconsin Statutes are to the 1999–2000 edition.

private pay patient's request for full reimbursement from a medical assistance provider.

¶ 4. We conclude that the circuit court properly granted DHFS' motion for summary judgment. We hold that a private pay patient does not have a federally protected right to reimbursement from the provider for the amount originally paid by the patient in excess of the medical assistance reimbursement. At the time of admittance, Keup was neither a medical assistance applicant nor a recipient. Pursuant to 42 U.S.C. § 1396r(c)(4)(B)(i) and 42 C.F.R. § 483.12(c)(2) (1999),[4] medical assistance providers may charge private pay patients any rate they deem appropriate, provided that the patient has notice as to the amount of the charge. We conclude that Wis. Stat. § 49.49(3m), Wis. Admin. Code § HFS 104.01(11) (Apr. 1999),[5] and the Medical Assistance Provider Handbook, Section VI, page A6–002 (Handbook) appropriately require medical assistance providers to refund only the amount paid by the medical assistance program on behalf of retroactively eligible persons.[6] We further hold that the Divi-

[4] Unless otherwise indicated, all references to the Code of Federal Regulations are to the 1999 edition.

[5] Unless otherwise indicated, all references to the Wisconsin Administrative Code are to the April 1999 edition.

[6] While the dissent cites some cases that appear to lend support to the proposition that Medicare coverage is retroactive for only three months before the month in which the application is filed, none of the cases explicitly state that the days that are in the month in which the application is filed, but that are before the actual date of the filing, are not also a part of this retroactive period. The court of appeals' case cited in paragraph 60 of the dissent, *St. Paul Ramsey Medical Center v. DHSS,* 186 Wis. 2d 37, 519 N.W.2d 681 (Ct. App. 1994), never expressly limited the retroactive period so as not to count the pre-

sion did not have jurisdiction to hear this claim, as none of the statutory bases for jurisdiction under Wis. Stat. § 49.45(5)(a) or Wis. Admin. Code § HFS 104.01(5)(a)1 were satisfied.

I

¶ 5. In late September 1999, Keup moved into Mequon Care Center (Mequon), a nursing home facility. Mequon is a medical assistance service provider for the Medical Assistance Program, a federal health insurance program administered by the states. Upon admittance, Mequon accepted Keup as a private pay patient. Keup prepaid the October 1999 charge at the private monthly rate of $4540.38.

¶ 6. On October 21, 1999, after she had already moved into Mequon, Keup applied for medical assistance benefits. On October 29, 1999, Keup was approved for benefits retroactive to October 1, 1999. DHFS, the Wisconsin agency responsible for administering the medical assistance program, paid Mequon for Keup's care in October in the amount of $3471.52 at the then prevailing rate of $106.26 per day. In accordance

application days of the application month. We use the terms retroactive and retroactivity consistent with a layperson's understanding of such terms. Retroactive refers to the time period prior to the determination that Keup was eligible to be a recipient of medical assistance benefits. The focus of the cases cited by the dissent was on the earliest possible day that coverage would apply, not on whether the pre-application days of the application month were part of the retroactive period. The dissent fails to address the first certified question, but rather leads us into areas not necessary for resolution of this case. The issue we must address is whether private pay patients have a federally protected right to reimbursement for the amount paid in excess of the medical assistance reimbursement.

with State policy, Mequon then refunded the same to Keup. Thus, Keup's total out-of-pocket expenses were $1068.86.

¶ 7. Believing she was entitled to a refund of the full amount she had paid, Keup filed a request for a fair hearing with the Division pursuant to Wis. Stat. § 49.45(5).[7] A hearing was held before a Division examiner. At the hearing, Keup contested the validity of the policy regarding refunds reflected in Wis. Stat. § 49.49(3m),[8] Wis. Admin. Code § HFS 104.01(11),[9] and

---

[7] Wisconsin Stat. § 49.45(5) provides in relevant part:

(5) Appeal. (a) Any person whose application for medical assistance is denied or is not acted upon promptly or who believes that the payments made in the person's behalf have not been properly determined or that his or her eligibility has not been properly determined may file an appeal with the department pursuant to par. (b). Review is unavailable if the decision or failure to act arose more than 45 days before submission of the petition for a hearing.

(b) 1. Upon receipt of a timely petition under par. (a) the department shall give the applicant or recipient reasonable notice and opportunity for a fair hearing.

[8] Wisconsin Stat. § 49.49(3m) provides in relevant part:

(3m) Prohibited Provider Charges. (a) No provider may knowingly impose upon a recipient charges in addition to payments received for services under ss. 49.45 to 49.47 or knowingly impose direct charges upon a recipient in lieu of obtaining payment under ss. 49.45 to 49.47 except under the following conditions:

1. Benefits or services are not provided under s. 49.46(2) and the recipient is advised of this fact prior to receiving the service.

2. If an applicant is determined to be eligible retroactively under s. 49.46(1)(b) and a provider bills the applicant directly for services and benefits rendered during the retroactive period, the provider shall, upon notification of the applicant's retroactive eligibility, submit claims for reimbursement under s. 49.45 for

the Handbook,[10] alleging that the provisions conflicted with federal regulations. Keup requested that DHFS be required to give her a full refund of the total amount she had paid. The Division concluded that Keup's request did not invoke any of the instances under § 49.45(5)(a) sufficient to confer jurisdiction upon the Division. The Division further concluded that it did not have jurisdiction under Wis. Admin. Code § HFS

covered services or benefits rendered during the retroactive period. Upon receipt of payment, the provider shall reimburse the applicant or other person who has made prior payment to the provider. No provider may be required to reimburse the applicant or other person in excess of the amount reimbursed under s. 49.45.

3. Benefits or services for which recipient copayment, coinsurance or deductible is required under s. 49.45(18), not to exceed maximum amounts allowable under 42 CFR 447.53 to 447.58.

[9] Wisconsin Admin. Code § HFS 104.01(11) provides in relevant part:

(11) RIGHT TO REQUEST RETURN OF PAYMENTS MADE FOR COVERED SERVICES DURING PERIOD OF RETROACTIVE ELIGIBILITY. If a person has paid all or part of the cost of health care services received and then becomes a recipient of MA benefits with retroactive eligibility for those covered services for which the recipient has previously made payment, then the recipient has the right to notify the certified provider of the retroactive eligibility period. At that time the certified provider shall submit claims to MA for covered services provided to the recipient during the retroactive period. Upon the provider's receipt of the MA payment, the provider shall reimburse the recipient for the lesser of the amount received from MA or the amount paid by recipient or other person, minus any relevant copayment. In no case may the department reimburse the recipient directly.

[10] The relevant portion of the Handbook states as follows: "When the provider receives WMAP payment, the provider must reimburse the recipient either the WMAP payment or the amount paid by the recipient or other person, minus any applicable copayment, whichever is less."

70

104.01(5)(a)1,[11] which grants jurisdiction "when [an applicant or recipient is] aggrieved by action or inaction of the agency or the department." Pursuant to these findings, the Division dismissed Keup's fair hearing request.

¶ 8. Keup filed this action against DHFS and the Secretary of DHFS[12] in Ozaukee County Circuit Court, seeking review of the Division's order dismissing her fair hearing request. Keup also pled an independent claim under 42 U.S.C. § 1983, alleging that Wis. Stat. § 49.49(3m), Wis. Admin. Code § HFS 104.01(11), and the Handbook, which require medical assistance providers to refund only the amount paid by the medical assistance program on behalf of retroactively eligible persons, were contrary to federal statutes and regulations.

¶ 9. Both Keup and DHFS filed motions for summary judgment. The circuit court granted DHFS' motion for summary judgment with respect to both issues. The circuit court, the Honorable Tom R. Wolfgram presiding, upheld the Division's ruling that it lacked jurisdiction to grant the relief Keup sought. Regarding the 42 U.S.C. § 1983 action, the court concluded that

[11] Wisconsin Admin. Code § HFS 104.01(5)(a)(1) states in relevant part: "(5) Appeals. (a) Fair hearing. 1. Applicants and recipients have the right to a fair hearing in accordance with procedures set out in ch. HSS 225 and this subsection when aggrieved by action or inaction of the agency or the department."

[12] Several people have held the title of Secretary of DHFS since the beginning of this action. For the sake of simplicity, we will use the term "Secretary" throughout this opinion to represent each Secretary of DHFS who has been sued in his or her official capacity during the course of this action.

Wis. Stat. § 49.49(3m), Wis. Admin. Code § HFS 104.01(11), and the Handbook did not violate federal statutes and regulations.

¶ 10. Keup appealed the circuit court's decision. Keup alleged that the Secretary of DHFS implemented Wis. Stat. § 49.49(3m), Wis. Admin. Code § HFS 104.01(11), and the Handbook and, in administering these provisions, acted under color of state law, and deprived her of the rights set forth in federal statutes and regulations.

¶ 11. As stated previously, the court of appeals certified two issues to this court.[13] The first issue certified is whether, after the State has retroactively compensated a medical assistance provider for nursing home services provided to a private pay patient and the provider has reimbursed the patient in the amount of the medical assistance, the patient has a federally protected right to reimbursement from the provider for the amount originally paid by the patient in excess of the medical assistance reimbursement. The second is- sue is whether the Division has jurisdiction, under Wis. Stat. § 49.45(5)(a), to grant a private pay patient's request for full reimbursement from a medical assis- tance service provider.

## II

¶ 12. We now consider whether private pay pa- tients have a federally protected right to reimburse-

---

[13] The court of appeals noted that if Keup were to prevail before this court, we would be confronted with another issue. Namely, we would have to decide whether Mequon should be given notice and an opportunity to participate in a Division hearing. We will not address this issue, as it is unnecessary to the holding reached in this case.

ment for the amount paid in excess of the medical assistance reimbursement. This issue involves statutory interpretation, which is a question of law that this court reviews de novo. *Hutson v. State Pers. Comm'n,* 2003 WI 97, ¶ 31, 263 Wis. 2d 612, 665 N.W.2d 212. Thus, we are not bound by an administrative agency's determination. *Id.* Nevertheless, we have generally used one of three standards of review, with varying degrees of deference, to review an agency's conclusions of law or statutory interpretation. *Id.* The three standards of deference this court typically applies to such agency decisions are great weight, due weight, or de novo. *Id.*

¶ 13. The highest level of deference accorded to an agency decision is great weight. We give an agency decision great weight deference when the following four criteria are met:

> " '(1) the agency was charged by the legislature with the duty of administering the statute; (2) [ ] the interpretation of the agency is one of long-standing; (3) [ ] the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) [ ] the agency's interpretation will provide uniformity and consistency in the application of the statute.' "

*UFE Inc. v. LIRC,* 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996) (quoting *Harnischfeger Corp. v. LIRC,* 196 Wis. 2d 650, 660, 539 N.W.2d 98 (1995)).

¶ 14. Under the great weight standard, an agency's interpretation of a statute will be upheld provided that it is "reasonable and not contrary to the clear meaning of the statute, . . . even if the court finds

that another interpretation is more reasonable." *Hutson,* 263 Wis. 2d 612, ¶ 32; *UFE,* 201 Wis. 2d at 286–87.

¶ 15. The intermediate level of deference is due weight. Due weight deference is appropriate when the agency has some experience in a particular area, but has not developed the expertise which necessarily places it in a better position than a court to make a judgment regarding the interpretation of a statute. *UFE,* 201 Wis. 2d at 286. We give the agency deference because the legislature has charged the agency with a statute's enforcement, and not necessarily because of its knowledge or skill in an area. *Id.* Under the due weight standard, a reviewing court will not overturn a reasonable agency interpretation that comports with the statute's purpose unless there is a more reasonable interpretation available. *Id.* at 286–87.

¶ 16. The lowest level of deference a reviewing court applies to an agency's decision is de novo review. Under de novo review, the agency's decision in a matter is given absolutely no weight. *Hutson,* 263 Wis. 2d 612, ¶ 34. A reviewing court considers an agency decision de novo when "the issue before the agency is clearly one of first impression, or when an agency's position on an issue has been so inconsistent so as to provide no real guidance." *UFE,* 201 Wis. 2d at 285 (citations omitted). De novo review is appropriate in this case because the issue in this case, whether a private pay patient has a federally protected right to reimbursement from the provider for the amount originally paid by the patient in excess of the medical assistance reimbursement, is one of first impression.

¶ 17. When interpreting a statute, this court first looks to the plain meaning of the statute itself. *Van-Cleve v. City of Marinette*, 2003 WI 2, ¶ 17, 258 Wis. 2d 80, 655 N.W.2d 113. When the statutory language is clear and unambiguous, we may not look beyond the plain words of the statute in question to ascertain its meaning. *Id.* To determine if a statute is ambiguous, we look to the statutory language itself. *Bruno v. Milwaukee County*, 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660 N.W.2d 656. Statutory language is given its usual and common meaning, while technical or specialized terms are interpreted according to their unique meanings. *Id.* If the statute is unambiguous, we must give effect to the words within the statute according to their common meanings. *DNR v. Wis. Power & Light Co.*, 108 Wis. 2d 403, 407, 321 N.W.2d 286 (1982). As a general rule, we do not review extrinsic sources, unless there is ambiguity. If the statutory language is ambiguous, however, we then may use the scope, history, context, and subject matter of the statute in order to ascertain legislative intent. *State v. Delaney*, 2003 WI 9, ¶ 14, 259 Wis. 2d 77, 658 N.W.2d 416. Statutory language is ambiguous if reasonable persons could disagree regarding its meaning. *Id.*

¶ 18. Keup asserts that DHFS' policies violate federal statutes and regulations, which are federally protected rights, thus violating 42 U.S.C. § 1983. According to Keup, DHFS violated 42 U.S.C. § 1396a(a)(10)(B),[14] the "uniformity" provision, by providing full medical assistance benefits to some, but not

---

[14] 42 U.S.C. § 1396a(a)(10)(B) provides in relevant part:

(a) Contents

A State plan for medical assistance must—

all, retroactively eligible recipients. Keup further asserts that DHFS violated 42 U.S.C. § 1396a(a)(34),[15] the "retroactivity" provision, by failing to provide her with retroactive medical assistance. Finally, Keup argues that DHFS violated 42 C.F.R. § 447.15,[16] the "payment in full" provision, as Mequon did not accept DHFS' payment as payment in full and, instead, retained the difference between DHFS' payment and the amount paid by Keup upon her admission to Mequon. Keup

(10) provide—

(B) that the medical assistance made available to any individual described in subparagraph (A)—

(i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual, and

(ii) shall not be less in amount, duration, or scope than the medical assistance made available to individuals not described in subparagraph (A).

[15] 42 U.S.C. § 1396a(a)(34) provides in relevant part:

A State plan for medical assistance must—

(34) provide that in the case of any individual who has been determined to be eligible for medical assistance under the plan, such assistance will be made available to him for care and services included under the plan and furnished in or after the third month before the month in which he made application (or application was made on his behalf in the case of a deceased individual) for such assistance if such individual was (or upon application would have been) eligible for such assistance at the time such care and services were furnished.

[16] 42 C.F.R. § 447.15 provides in relevant part: "A State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual."

states that § 1396a(a)(10)(B), § 1396a(a)(34), and § 447.15 are enforceable under § 1983, as they comport with the standards set forth by the United States Supreme Court's case law.

¶ 19. DHFS asserts that 42 U.S.C. § 1396a(a)(10)(B), 42 U.S.C. § 1396a(a)(34), and 42 C.F.R. § 447.15 do not create federally enforceable rights to be free from out-of-pocket expenses when a private pay patient contracts with a medical assistance service provider. DHFS argues that § 1396a(a)(10)(B), § 1396a(a)(34), and § 447.15 do not unambiguously impose binding obligations on the State to reimburse private pay patients who were found retroactively eligible for medical assistance benefits when the amount paid by the patient is greater than the State's medical assistance benefit amount.

¶ 20. It is necessary for our analysis to discuss when an action appropriately exists under 42 U.S.C. § 1983. A claim may exist under § 1983 when either a constitutional provision or a statutory provision of federal law is violated. *Maine v. Thiboutot*, 448 U.S. 1, 4, (1980). However, there are two exceptions to this general rule. First, § 1983 may not be used to remedy a statutory violation, if the statute in question does not create an enforceable right under § 1983. *Wright v. Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 423, (1987). Second, § 1983 may not be used to remedy a statutory violation if Congress has foreclosed enforcement of the statute in question under § 1983 itself. *Id.* Thus, if a state deprives a person of a right secured by a federal statute, § 1983 may be used to remedy the statutory violation unless the state can show by an express provision, or present specific evidence from the

statute itself, that Congress intended to preclude private enforcement of the right. *Id.*

¶ 21. Yet, even if a person demonstrates that a federal statute creates an individual right, there exists only a rebuttable presumption that the right is enforceable under 42 U.S.C. § 1983. *Blessing v. Freestone,* 520 U.S. 329, 341, (1997). In order to support a claim under § 1983, a plaintiff must demonstrate that the statute unambiguously confers a right to such action. *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283, (2002).

¶ 22. In *Blessing,* the United States Supreme Court listed three criteria that must be met in order to conclude that a statutory provision gives rise to a federal right. *Blessing,* 520 U.S. at 340. First, Congress must have intended that the provision in question benefit the plaintiff. *Id.* Second, the plaintiff must demonstrate that the right allegedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence. *Id.* at 340–41. Third, the statutory provision must unambiguously impose a binding obligation on the states. *Id.* at 341. More specifically, the provision giving rise to the right must be couched in mandatory, rather than precatory,[17] terms. *Id.* If the text of a statute is precatory, it cannot be read to bind the states to any obligation. Congress' power legitimately to legislate under the spending power is contingent upon the states' knowing and voluntary acceptance of the terms set by Congress.

---

[17] In referencing "precatory" terms, we refer to words "requesting, recommending, or expressing a desire for action, but usu(ally) in a nonbinding way." *Black's Law Dictionary* 1195 (7th ed. 1999).

*Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 17, (1981). If a state is unaware of the conditions imposed by Congress, or if the conditions are not easily discernible, the state cannot be said knowingly to accept Congress' terms. *Id.* Thus, congressional encouragement of state programs and the imposition of binding obligations on the states are two entirely different matters. *Id.* at 27.

¶ 23. Keup asserts that each federal provision in question satisfies the *Blessing* criteria. Keup argues that 42 U.S.C. § 1396a(a)(10)(B) was clearly intended to benefit persons such as her, as medical assistance eligible individuals are the intended beneficiaries of this provision. Keup further states that the right protected by § 1396a(a)(10)(B) is not so vague or amorphous, so as to strain judicial competence in its enforcement, as the provision suggests that all individuals who are eligible to receive medical assistance benefits must receive the same benefits. Keup reasons that § 1396a(a)(10)(B) is mandatory upon the State because of the use of the words "must" within 42 U.S.C. § 1396a(a) and "shall" within § 1396a(a)(10)(B).

¶ 24. Regarding 42 U.S.C. § 1396a(a)(34), Keup asserts that she is clearly an intended beneficiary, as Congress stated that medical assistance eligible individuals are the beneficiaries of the requirement that states must retroactively provide medical assistance benefits. Keup states that § 1396a(a)(34) is neither vague nor ambiguous. Because § 1396a(a)(34) contains the word "must," Keup argues that the language of the provision is clearly mandatory upon the State of Wisconsin.

¶ 25. Finally, Keup asserts that medical assistance eligible individuals are the intended beneficiaries of 42 C.F.R. § 447.15, as they are benefited by not

79

incurring out-of-pocket expenses. Keup states that § 447.15's language is neither vague nor ambiguous. Keup further alleges that § 447.15 is mandatory upon the states, as it contains the word "must" twice.

¶ 26. DHFS argues that 42 U.S.C. § 1396a(a)(10)(B), 42 U.S.C. § 1396a(a)(34), and 42 C.F.R. § 447.15 fail the third *Blessing* prong, as those sections do not unambiguously impose a binding obligation on the State of Wisconsin to reimburse the private pay patient the amount originally paid by the patient in excess of the medical assistance reimbursement.

¶ 27. We conclude that 42 U.S.C. § 1396a(a)(10)(B), 42 U.S.C. § 1396a(a)(34), and 42 C.F.R. § 447.15 do not unambiguously impose binding obligations on the State, as required by *Blessing,* to reimburse private pay patients who were found retroactively eligible for medical assistance benefits for the out-of-pocket expenses they incurred before they were eligible for medical assistance. Looking to the plain language of the statutes in question, we conclude that the relevant statutory language is clear and unambiguous and, as a result, must be given its plain meaning.

¶ 28. Keup received the same amount of medical assistance benefits for the month of October as a private pay patient who applies for benefits subsequent to his or her admission and is declared retroactively eligible for benefits. Based on the plain language of 42 U.S.C. § 1396a(a)(10)(B), we cannot say that private pay patients are entitled to a refund of their entire payment in order for their benefits to be deemed compliant with the "uniformity" provision. Further, 42 U.S.C. § 1396a(a)(34) cannot reasonably be read to require the states to retroactively reimburse private pay patients the entire amount paid by them before they applied for

and began receiving benefits. Keup received medical assistance benefits retroactively for the same amount as every other medical assistance recipient residing at Mequon for the month of October. Finally, 42 C.F.R. § 447.15 cannot be reasonably construed as unambiguously requiring that medical assistance providers reimburse a private pay patient the difference between the medical assistance benefits and the patient's original amount paid to the medical assistance provider.

¶ 29. We conclude that none of the statutes in question can be said to contain mandatory language that binds the states. To the contrary, it does not appear that Congress ever intended for private pay patients to be reimbursed for out-of-pocket amounts incurred prior to their application, and subsequent eligibility, for medical assistance. Congress did not unambiguously impose an obligation on the states to reimburse private pay patients for such amounts. It is further evident that, given the position DHFS has taken in the claim, it was also unaware of any allegedly binding obligation imposed upon it by Congress. Given the plain language of the statutes in question and their failure to impose any such unambiguous obligations, we must conclude that Congress did not intend to bind the states under § 1396a(a)(10)(B), § 1396a(a)(34), and § 447.15.

¶ 30. Moreover, other federal statutory provisions permit Mequon to retain the amount of Keup's October 1999 payment that exceeded DHFS' reimbursement. At the time she was admitted to Mequon, Keup was neither an applicant nor a recipient of medical assistance benefits. The applicant/recipient distinction is reflected in 42 C.F.R. § 400.203.[18] Under § 400.203, Keup was not an applicant at the time of her admission

_____

[18] 42 C.F.R. § 400.203 provides in relevant part:

to Mequon, as she did not have an application pending for medical assistance. Moreover, Keup was not a recipient of medical assistance benefits at the time of her admittance, as she had not yet been determined eligible for medical assistance benefits. Thus, it is clear that Keup entered Mequon as a private pay patient.

¶ 31. Under 42 U.S.C. § 1396r(c)(4)(B)(i),[19] Mequon may charge private pay patients a rate of its choosing, provided that such patients have adequate notice of the applicable rate. Further, under 42 C.F.R. § 483.12(c)(2),[20] medical assistance service providers may specifically charge private pay patients any

As used in connection with the Medicaid program, unless the context indicates otherwise—

Applicant means an individual whose written application for Medicaid has been submitted to the agency determining Medicaid eligibility, but has not received final action. This includes an individual (who need not be alive at the time of application) whose application is submitted through a representative or a person acting responsibly for the individual.

Recipient means an individual who has been determined eligible for Medicaid.

[19] 42 U.S.C. § 1396r(c)(4)(b)(i) provides in relevant part:

(c) Requirements relating to residents' rights

(4) Equal access to quality care

(B) Construction

(i) Nothing prohibiting any charges for non-medicaid patients

Subparagraph (A) shall not be construed as prohibiting a nursing facility from charging any amount for services furnished, consistent with the notice in paragraph (1)(B) describing such charges.

[20] 42 C.F.R. § 483.12(c)(2) provides in relevant part: "(c) Equal access to quality care. (2) The facility may charge any

amount they deem appropriate, provided that the patient is given notice of the charges. Because Keup was a private pay patient at the time of her admittance to Mequon, both she and Mequon had the freedom to contract regarding the charge for Mequon's services for October 1999. The record indicates that Keup did have notice of Mequon's monthly rate, since her prepayment of the October 1999 charges seems to demonstrate rather clearly her awareness of Mequon's rate for its services.

¶ 32. We hold that a private pay patient does not have a federally protected right to reimbursement from a medical assistance provider for the amount originally paid by the patient in excess of the medical assistance reimbursement. Persons who are neither medical assistance applicants nor recipients under 42 C.F.R § 400.203 at the time of their admission to a medical assistance provider are private pay patients. As we have discussed, pursuant to 42 U.S.C. § 1396r(c)(4)(B)(i) and 42 C.F.R. § 483.12(c)(2), medical assistance providers may charge private pay patients any rate they deem appropriate, provided that the patient has notice as to the amount of the charge. Here, Keup and Mequon entered into a contract setting the charges for Keup's stay during October 1999. We further hold, based on the same approach to contract, that Wis. Stat. § 49.49(3m), Wis. Admin. Code § HFS 104.01(11), and the Handbook appropriately require medical assistance providers, such as Mequon, to refund only the amount paid by the medical assistance program on behalf of retroactively eligible persons.

---

amount for services furnished to non-Medicaid residents consistent with the notice requirement in § 483.10(b)(5)(i) and (b)(6) describing the charges."

¶ 33. We next consider whether the Division has jurisdiction, under Wis. Stat. § 49.45(5)(a), to grant a private pay patient's request for full reimbursement from a medical assistance provider. As noted in section II, an agency's decision is generally entitled to some deference when the agency has special knowledge or skill in interpreting a statute. However, an agency's decision regarding the scope of its own power is not binding on reviewing courts. *Wis. Envtl. Decade v. Pub. Serv. Comm'n,* 81 Wis. 2d 344, 351, 260 N.W.2d 712 (1978); *Big Foot Country Club v. Wis. Dept. of Revenue,* 70 Wis. 2d 871, 875, 235 N.W.2d 696 (1975); *Bd. of Regents v. Wis. Pers. Comm'n,* 103 Wis. 2d 545, 551, 309 N.W.2d 366 (Ct. App. 1981). Thus, we owe no deference to the agency's decision here, which defines the scope of its own power. *Amsoil v. LIRC,* 173 Wis. 2d 154, 165, 496 N.W.2d 150 (Ct. App. 1992). We, therefore, review the issue de novo.

¶ 34. Keup asserts that she was entitled to a fair hearing because the amount and sufficiency of her October 1999 medical assistance benefits are in dispute. Keup states that her medical assistance benefits were clearly insufficient, since the difference between what she paid Mequon and what she was reimbursed by medical assistance totaled $1068.86. Keup suggests that, because the medical assistance payment she did receive from the State failed to make her whole, DHFS failed to act promptly with respect to her application, thus satisfying the jurisdictional basis under Wis. Stat. § 49.45(5)(a).

¶ 35. Keup further contends that the Division "acted," as contemplated by Wis. Admin. Code § HFS

104.01(5)(a)1, when it created its statutes and policies, which violate federal law. Keup alleges that DHFS "failed to act" when it did not provide her with medical assistance sufficient to cover her out-of-pocket expenses.

¶ 36. DHFS asserts that the Division correctly decided that it did not have jurisdiction to hear Keup's claim under Wis. Stat. § 49.45(5)(a) or Wis. Admin. Code § HFS 104.01. With respect to § 49.45(5)(a), DHFS states that there is not a jurisdictional basis for the Division to hold a fair hearing, as Keup's claim does not fall under any of the four options listed in the statute. According to DHFS, Keup was not denied medical assistance benefits, her application was acted on promptly, she was reimbursed the correct amount for her October 1999 expenses, and her eligibility for medical assistance benefits was not improperly determined. DHFS contends that Keup's assertion that she received insufficient benefits is unfounded, as she received the same amount of medical assistance benefits provided to every other Mequon resident.

¶ 37. DHFS further agrees with the Division's decision that jurisdiction does not lie under Wis. Admin. Code. § HFS 104.01(5)(a)1. DHFS asserts that the legislature created Wis. Stat. § 49.49(3m)(a)2, and that DHFS' policies merely reflect the legislative policy behind the statute. DHFS further asserts that it is Mequon, not DHFS, who retained the out-of-pocket expenses Keup incurred. Thus, DHFS argues, it is Mequon's actions that have affected Keup.

¶ 38. Under Wis. Stat. § 49.45(5)(a), the Division has jurisdiction in only the following four circumstances: (1) denial of medical assistance benefits; (2) medical assistance application not acted on promptly; (3) medical assistance payments that were made were

not determined properly; or (4) medical assistance eligibility that was not determined properly.

¶ 39. We conclude that the Division correctly decided that it did not have jurisdiction to hear Keup's claim under Wis. Stat. § 49.45(5)(a), because none of the statutory bases for jurisdiction were met. Keup was not denied medical assistance benefits, as she was approved to receive medical assistance benefits in late October retroactive to October 1, 1999. Because Keup both applied for and was approved for medical assistance benefits in October, she may not claim that her medical assistance application was not acted on promptly. Further, Keup's claim cannot be categorized as one in which her medical assistance payments were not determined properly. Keup received the amount of medical assistance benefits to which she was entitled, as she received the prevailing medical assistance rate of $106.26 per day. Simply because Keup incurred out-of-pocket expenses as a private pay patient does not mean that the retroactive benefits provided to her are insufficient. Finally, Keup's claim does not really involve the issue of whether her medical assistance eligibility was determined properly, since DHFS did determine that Keup was eligible to receive medical assistance benefits.

¶ 40. We further conclude that the Division did not have jurisdiction to hear Keup's claim under Wis. Admin. Code § HFS 104.01(5)(a)1. Pursuant to § 104.01(5)(a)1, the Division has jurisdiction "when [an applicant or recipient is] aggrieved by action or inaction of the agency or the department." We agree with the Division's assertion that Keup was not injured by DHFS' action or inaction. DHFS did not violate federal statutes or regulations by failing to reimburse Keup's out-of-pocket expenses. As discussed in Section II of

this opinion, Keup does not have a federally protected right to such reimbursement, and the state statutory provisions dealing with medical assistance benefits provide for the appropriate reimbursement amount. Keup contracted with Mequon, not DHFS, to enter the nursing facility, and Mequon retained that portion of Keup's payment that was not reimbursed by the State. Thus, DHFS cannot be required to reimburse Keup. In fact, § 104.01(11) prohibits DHFS from directly reimbursing medical assistance recipients. As Mequon, not DHFS, retained Keup's $1068.86, and Mequon is not an agency or department, the Division did not have jurisdiction to hear Keup's claim under § 104.01(5)(a)1, since she was not "aggrieved by action or inaction of the agency or the department."

## IV

¶ 41. We conclude that the circuit court was correct when it granted DHFS' motion for summary judgment. We hold that a private pay patient does not have a federally protected right to reimbursement from the provider for the amount originally paid by the patient in excess of the medical assistance reimbursement. At the time of admittance, Keup was neither a medical assistance applicant nor a recipient, but was a private pay patient. Pursuant to 42 U.S.C. § 1396r(c)(4)(B)(i) and 42 C.F.R. § 483.12(c)(2), medical assistance providers may charge private pay patients any rate such provider deems appropriate, provided that the patient has notice of the amount of the charge. The record reflects that Keup did have such notice. We conclude that Wis. Stat. § 49.49(3m), Wis. Admin. Code § HFS 104.01(11), and the Handbook appropriately require medical assistance providers to refund only the amount paid by the medical assistance program on behalf of

retroactively eligible persons. We further hold that the Division did not have jurisdiction to hear Keup's claim, as none of the statutory bases for jurisdiction under Wis. Stat. § 49.45(5)(a) or Wis. Admin. Code § HFS 104.01(5)(a)1 were met.

*By the Court.*—The order of the Circuit Court for Ozaukee County is affirmed.

¶ 42. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). Medicaid is a program that was enacted in 1965 as a cooperative program between the states and the federal government to provide medical assistance to indigent individuals. "While state participation in the Medicaid program is purely voluntary, a state that participates must comply with the Medicaid laws and implementing regulations."[1]

¶ 43. The majority opinion concludes that Congress never "intended for private pay patients to be reimbursed for out-of-pocket amounts incurred prior to their application, and subsequent eligibility, for medical assistance."[2] The majority reaches the wrong result because it takes the wrong path. It takes the wrong path because it attempts to answer the certified question.

¶ 44. Put simply, the court of appeals erred in stating the certified question. Its certified question assumes that the State retroactively compensated a medical assistance provider.[3] Whether the compensation was retroactive is the very question presented in the present case.

¶ 45. The court of appeals and the majority opinion use the ordinary dictionary definition of "retroac-

---

[1] *Carroll v. DeBuono,* 998 F. Supp. 190, 193 (N.D.N.Y. 1998).

[2] Majority op., ¶ 29.

[3] Majority op., ¶ 3.

tive." But the period of retroactivity is defined by law. The law is clear that the period of retroactivity begins before the month in which an applicant applies for benefits. None of the federal or state statutes or case law implicated in this case states or suggests that the month of application, here October 1999, is part of the period of retroactivity.

¶ 46. The facts are undisputed. Ms. Keup was a private pay patient in late September 1999 and prepaid her expenses for the month of October at the private pay patient rates. She applied for benefits on October 21, 1999. On October 29, 1999, Ms. Keup was approved eligible for benefits from October 1, 1999, and the Department of Health and Family Services (DHFS) paid the provider at the fixed medical assistance rate for Ms. Keup's care in October. The provider refunded the sum received from DHFS to Ms. Keup, but did not refund the full amount she had prepaid for the month of October.

¶ 47. The court of appeals and the majority opinion presume that any coverage provided by DHFS prior to October 21, 1999, the date of application, is "retroactive." The majority makes this presumption because it uses the common, layperson's definition of "retroactive" instead of using the definition of "retroactive" set forth in the applicable federal and state laws.[4] Because I conclude that the majority opinion ignores the relevant federal and state laws defining the period of eligibility for retroactive benefits and because I conclude, contrary to the majority opinion, that Ms. Keup is not requesting a refund of moneys paid during her three-month period of eligibility for retroactive benefits (that is, July, August, and September), but rather is

---

[4] Majority op., ¶ 4 n.6.

89

requesting a refund of moneys she paid during October 1999, the month in which she made application and in which she was eligible for benefits, I dissent. I further conclude that DHFS has jurisdiction to provide Ms. Keup a fair hearing and that the issue should be remanded to the Division of Hearings and Appeals and DHFS for a hearing.

I

¶ 48. A number of statutes and administrative rules, both state and federal, come into play in this case. I conclude, as did the amicus brief of the Wisconsin Coalition for Advocacy, Legal Aid Society of Milwaukee, Elder Center of the Coalition of Wisconsin Aging Groups, Employment Resources, Inc., and ABC for Health, that this case can be resolved by a proper application of Wis. Stat. § 49.49(3m).

¶ 49. Section § 49.49(3m)(a) sets forth the general rule that "[n]o provider may knowingly impose upon a recipient charges in addition to payments received for services . . . ." The prohibition recognizes that recipients of Medicaid are poor and cannot pay significant out-of-pocket health care costs.

¶ 50. Nevertheless, the legislature has provided exceptions to the general rule set forth in Wis. Stat. § 49.49(3m)(a). The exception claimed to be applicable to the present case, § 49.49(3m)(a)(2), provides that "[i]f an applicant is determined to be eligible retroactively under s. 49.46(1)(b)[5] and a provider bills the applicant directly for services and benefits rendered during the

---

[5] Section 49.46(1)(b) provides as follows: "Any person shall be considered a recipient of aid for 3 months prior to the month of application if the proper agency determines eligibility existed during such prior month."

retroactive period," then the provider must obtain reimbursement under § 49.45 for the retroactive period and pay over those funds to the applicant; "[n]o provider may be required to reimburse the applicant or other person in excess of the amount reimbursed under s. 49.45."

¶ 51. In other words, under Wis. Stat. § 49.49(3m)(a)2 a health care provider is allowed to keep the difference, if any, between funds a recipient of medical assistance paid to a provider during the period of eligibility for retroactive benefits and the fixed reimbursement amount of medical assistance provided through the Medicaid program.

¶ 52. Wisconsin Admin. Code § HFS 106.04(3) similarly states that a provider shall reimburse a recipient of medical assistance the lesser of the amount received from medical assistance or the amount paid by the recipient for the "retroactive eligibility period."[6]

---

[6] Wisconsin Admin. Code § HFS 106.04(3) provides in relevant part:

A provider shall accept payments made by the department in accordance with sub. (1) as payment in full for services provided a recipient. A provider may not attempt to impose a charge for an individual procedure or for overhead which is included in the reimbursement for services provided nor may the provider attempt to impose an unauthorized charge or receive payment from a recipient, relative or other person for services provided, or impose direct charges upon a recipient in lieu of obtaining payment under the program, except under any of the following conditions:

. . . .

(b) An applicant is determined to be eligible retroactively under s. 49.46(1)(b), Stats., and a provider has billed the applicant directly for services during the retroactive period, in which case the provider shall, upon notification of the recipient's retroactive eligibility, submit claims under this section for covered services

This Wisconsin administrative rule, like the Wisconsin statute, does not require a provider to reimburse the recipient of medical assistance the full amount the recipient paid the provider during the "retroactive eligibility period." Wisconsin Admin. Code § HFS 106.04(3) is an almost verbatim restatement of Wis. Stat. § 49.49(3m).

¶ 53. To determine how much the provider in the present case must reimburse Ms. Keup, the recipient of medical assistance for the month of October 1999, I must determine whether October 1999 falls within or outside of Ms. Keup's period of eligibility for retroactive benefits.

¶ 54. At the federal level, 42 U.S.C. § 1396a(a)(34) and 42 C.F.R. 435.914(a) determine the retroactive eligibility period. Section 1396a(a)(34) governs the retroactive eligibility of an individual to receive benefits for services and distinguishes between the month of application and the three months prior to the month of application. This provision defines the period of eligibility for retroactive benefits as beginning with "the third month before the month in which [the individual] made application for such assistance . . . ."[7] The federal

provided during the retroactive period. Upon receipt of payment from the program for the services, the provider shall reimburse in full the recipient or other person who has made prior payment to the provider. A provider shall not be required to reimburse the recipient or other person in excess of the amount reimbursed by the program . . . .

[7] In full, 42 U.S.C. § 1396a(a)(34) provides that:

[A state plan for medical assistance must] provide that in the case of any individual who has been determined to be eligible for medical assistance under the plan, such assistance will be made available to him for care and services included under the plan and furnished in or after the third month before the month in which he made application (or application was made on his behalf in the case

law thus calculates the three-month period of eligibility for retroactive benefits from the month of application rather than from the date on which the recipient applied for medical assistance or was declared eligible for medical assistance.

¶ 55. The language of § 1396a(a)(34) is clarified by the implementing federal code regulation, 42 C.F.R. § 435.914, which governs the effective date of eligibility for Medicaid in the states. Section 435.914(a) requires that state Medicaid agencies "make eligibility for Medicaid effective no later than the third month before the month of application" for individuals who received services during this three-month period.[8]

of a deceased individual) for such assistance if such individual was (or upon application would have been) eligible for such assistance at the time such care and services were furnished.

[8] 42 C.F.R. § 435.914 provides in full as follows:

(a) The agency must make eligibility for Medicaid effective no later than the third month before the month of application if the individual—

(1) Received Medicaid services, at any time during that period, of a type covered under the plan; and

(2) Would have been eligible for Medicaid at the time he received the services if he had applied (or someone had applied for him), regardless of whether the individual is alive when application for Medicaid is made.

(b) The agency may make eligibility for Medicaid effective on the first day of a month if an individual was eligible at any time during that month.

(c) The State plan must specify the date on which eligibility will be made effective.

¶ 56. Case law confirms that the month of application is not within the definition of the period of eligibility for retroactive benefits.[9] In *Blanco v. Anderson,* 39 F.3d 969, 972 (9th Cir. 1994), the Ninth Circuit Court of Appeals addressed the operation of 42 U.S.C. § 1396a(a)(34). The Ninth Circuit clarified that § 1396a(a)(34) did not include the month of application as part of the three-month period of eligibility for retroactive benefits. It explained the calculation of the period of eligibility for retroactive benefits as follows:

> Medicaid coverage is retroactive for three months before the month in which the application is filed. If a person sought to apply for Medicaid on Friday, July 29, 1994, but found the office closed and so applied on Monday, August 1, she would have Medicaid coverage only for May, June and July and would have lost the coverage that she would have had for April if she had been able to apply on July 29.[10]

¶ 57. Similarly, the argument that the three-month period of eligibility for retroactive benefits is measured from the day of the application was explicitly rejected in *Kempson v. North Carolina Department of Human Resources,* 397 S.E.2d 314 (N.C. Ct. App. 1990). In that case, the North Carolina Court of Appeals concluded that a December 22, 1988, "application would

[9] In addition to the case law, a memorandum of the Department of Health & Human Services, Centers for Medicare & Medicaid Services, dated January 8, 2004, available at http://www.cms.hhs.gov/medicaid/survey-cert/sc0417.pdf (supplied by Ms. Keup and on file with the clerk of the Wisconsin Supreme Court, Madison, Wis.), supports the reasoning and conclusion of this dissent. *See* Wis. Stat. § 902.03(2) (judicial notice of federal regulations and orders).

[10] *Blanco v. Anderson,* 39 F.3d 969, 972 (9th Cir. 1994) (citation omitted).

provide retroactive coverage back three full months before the month of . . . application."[11] The North Carolina Court of Appeals therefore declared that the patient was eligible for retroactive benefits beginning September 1, 1988. The North Carolina Court of Appeals rejected the argument that the three-month period for retroactive benefits was measured from the day of the application. The court characterized the period of coverage from December 1, 1988, on as prospective and from September 1, 1988 to November 30, 1988, as retroactive.[12] Other courts have reached a similar conclusion with respect to 42 U.S.C. § 1396a(a)(34).[13]

¶ 58. Wisconsin has recognized and accepted the federal distinction between the month of application and the three prior months as the period of eligibility

[11] *Kempson v. N.C. Dep't of Human Resources,* 397 S.E.2d 314, 319 (N.C. Ct. App. 1990).

[12] *Id.* at 316.

[13] *See, e.g., Blanchard v. Forrest,* 71 F.3d 1163, 1166 (5th Cir. 1996) ("[A] state Medicaid plan must make available medical assistance for covered medical services furnished to the Medicaid recipient within the three months prior to the month in which the recipient applied for Medicaid ('the retroactive coverage period') if the recipient would have been eligible for Medicaid at the time the medical services were furnished."); *Ahrendsen v. Iowa Dep't of Human Servs.,* 613 N.W.2d 674, 677 (Iowa 2000) ("Lydia's September 1996 application for Medicaid benefits was approved effective June 1, 1996, which was three months prior to the month in which the application was submitted. That was the maximum period for retroactive payment permitted by federal statute and state regulation."); *Majurin v. Dep't of Social Servs.,* 417 N.W.2d 578, 580 (Mich. Ct. App. 1988) ("[T]here can be no legitimate dispute that under the federal scheme the state provider (here defendant) must provide retroactive coverage only back through the third month prior to the month of initial application.").

for retroactive benefits. The definition of the period of eligibility for retroactive benefits is set forth in Wis. Stat. § 49.46(1)(b), which mirrors its federal counterparts.

¶ 59. Section 49.46(1)(b) provides that "[a]ny person shall be considered a recipient of aid for 3 months *prior to the month of application* if the proper agency determines eligibility existed during such prior month." (emphasis added). Section 49.46(1)(b), like its federal counterparts, establishes that the period of retroactive benefits refers to the three month period *prior to* the month of application for benefits. Like the controlling federal statute, the month of application itself is not part of the period of retroactive benefits under § 49.46(1)(b).

¶ 60. The court of appeals has previously addressed how § 49.46(1)(b) should operate. In *St. Paul Ramsey Medical Center v. Wisconsin Department of Health and Social Services,* 186 Wis. 2d 37, 45, 519 N.W.2d 681 (Ct. App. 1994), the court of appeals concluded that a medical assistance application filed on May 5, 1992, would allow a full three months of retroactive benefits prior to the month of May. The court of appeals concluded that the period of retroactive benefits ran from February 1, 1992 until April 30, 1992. In other words, the first five days of May did not count as part of the period of eligibility for retroactive benefits as those days were part of the "month of application."

¶ 61. In reaching its conclusion in the *St. Paul* case, the court of appeals apparently relied on DHSS's (now DHFS) own interpretation of § 49.46(1)(b). In its brief to the court of appeals, DHSS argued that a person shall be considered a recipient of aid for three months prior to the month of application if the proper agency determines eligibility existed during such prior month.

96

The earliest possible date of medical assistance eligibility in *St. Paul,* as certified by the county agency, was February 1, 1992, three months prior to the May 5, 1992, application. If, in fact, as the State now seems to be arguing, the three-month period of eligibility for retroactive benefits runs from the date of application, the three-month period of retroactive eligibility in *St. Paul* would have run from February 4, 1992, not February 1, 1992.

¶ 62. Thus, all authority, both federal and state, on the subject seems to point toward the same conclusion.[14] The statute allowing a provider to refund to a recipient only the amount the provider receives does not apply to the month in which an application is made; this statute applies only to the three—month period of eligibility for retroactive benefits prior to the month of application.

¶ 63. According to the majority opinion, the pre-application days of the application month are part of the period of eligibility for retroactive benefits.[15] Therefore, according to the majority opinion, the period of eligibility for retroactive benefits can be longer than three months. Yet, the statutes limit the period of eligibility for retroactive benefits to three months. The

---

[14] Additional Wisconsin statutes also confirm the language of § 49.46(1)(b). Wisconsin Stat. § 49.47(4)(d), pertaining to medical assistance for the medically indigent, echoes the language of § 49.46(1)(b) and provides that "[a]n individual is eligible for medical assistance under this section for 3 months prior to the month of application if the individual met the eligibility criteria under this section during those months." Likewise, § 49.47(6)(d) provides that "[n]o payment under this subsection may include care for services rendered earlier than 3 months preceding the month of application."

[15] Majority op., ¶ 4 n.6.

majority opinion therefore seems to unlawfully extend the period of eligibility for retroactive benefits beyond what is authorized by statute. In this respect, the reasoning of the other courts that have touched on this issue are more faithful to the words and intent of the statutes defining the period of eligibility for retroactive benefits.

¶ 64. Ms. Keup was not found eligible for medical assistance for any months prior to the month of her application; she never requested reimbursement for expenditures during her period of eligibility for retroactive benefits under Wis. Stat. § 49.46(1)(b). She requested reimbursement only for the payments she made during the month of her application, October 1999. Under the federal and state statutes, October 1999, the month of application, is not to be considered within the period of eligibility for retroactive benefits. The general rule requiring a provider to accept the payments made by DHFS as payments in full applies to October 1999. I therefore conclude that the provider must reimburse Ms. Keup for the entire payment she made in October 1999.

¶ 65. Without discussion of Wis. Stat. § 49.46(1)(b), the majority opinion focuses on the federal distinction between applicants and recipients reflected in 42 C.F.R. § 400.203.[16] It argues that at the

---

[16] In relevant part, 42 C.F.R. § 400.203 provides:

Definitions specific to Medicaid.

As used in connection with the Medicaid program, unless the context indicates otherwise—

"Applicant" means an individual whose written application for Medicaid has been submitted to the agency determining Medicaid eligibility, but has not received final action. This includes an individual (who need not be alive at the time of application) whose

time Ms. Keup entered the care facility in October 1999, she was neither an applicant nor a recipient under federal law[17] and that she must have been a private pay patient to whom the care facility was authorized to charge any amount it deemed appropriate provided that the patient was given notice of the charge.[18] Without analysis, the majority opinion presumes (as did the court of appeals) that the medical assistance Ms. Keup received for the month of October 1999 was retroactive because she applied for the assistance on October 21, 1999, and was approved for and received coverage beginning October 1, 1999.[19] While the benefits Ms. Keup received for October 1–21 may be characterized as "retroactive" in the layperson's sense of the word because they covered a period of time prior to the date of

---

application is submitted through a representative or a person acting responsibly for the individual.

. . . .

"Recipient" means an individual who has been determined eligible for Medicaid.

[17] Majority op., ¶ 30.

[18] Majority op., ¶ 31.

[19] Majority op., ¶ 6. Although Wis. Admin. Code § HFS 104.01(11), which reiterates the exception that a provider does not have to fully reimburse a patient for payments made during the period of eligibility for retroactive benefits, need not conflict with § 49.49(3m) (or § HFS 106.04(3)), the majority opinion would seem to create such a conflict by interpreting the phrase "period of eligibility for retroactive benefits" differently under § HFS 104.01(11) and under § 49.49(3m). If there were, in fact, a conflict, § 49.49(3m) and § 49.46(1)(b) would control because statutory enactments supercede administrative rules. *Seider v. O'Connell,* 2000 WI 76, ¶ 73, 236 Wis. 2d 211, 612 N.W.2d 659; *Basic Prods. Corp. v. Wis. Dep't of Taxation,* 19 Wis. 2d 183, 186, 120 N.W.2d 161 (1963).

the application, they were not retroactive under the federal and state statutes and rules defining the period of eligibility for retroactive benefits as the three-month period prior to the month of application.

¶ 66. Because her month of application was October 1999, Ms. Keup's eligibility for retroactive benefits ran from July 1, 1999, until September 30, 1999. Since Ms. Keup is only requesting total reimbursement for her nursing home prepayment for the month of October, she is not requesting reimbursement for payments made during her period of retroactive eligibility.[20] Ms. Keup is therefore, in my opinion, entitled to a refund for the additional payment she made during October 1999. This interpretation corresponds with the technical use of the words governing the period of eligibility for retroactive benefits in the text of the federal and state statutes and rules.

---

[20] Ms. Keup was not, as the State and the majority opinion contend, a "private pay" patient in October 1999. The State's reliance on 42 C.F.R. § 483.12(c)(2), which states that a "facility may charge any amount for services furnished to non-Medicaid residents consistent with the notice requirement" is inapposite because for the month of October Ms. Keup was a Medicaid recipient.

Furthermore, the majority opinion's assumption that the patient in this case was requesting retroactive eligibility is not reflected in the record. Rather, a statement filed by the Ozaukee County Department of Social Services indicated that "Ms. Keup completed intake appointment for Medical Assistance-Institutions Categorically Needy on October 21, 1999. County worker processed case on October 29, 1999 for financial *eligibility onset date of October 1, 1999."* (Emphasis added.) The record does not suggest that the patient's medical assistance benefits were being applied retroactively, as the majority opinion intimates, but instead that she was eligible for medical assistance on October 1, 1999.

¶ 67. The interpretation the majority opinion adopts not only disregards the text of the statutes and rules, but also fails to promote the overall goal of Wisconsin's participation in Medicaid: to provide health care to indigent individuals. For example, individuals seeking Medicaid eligibility as "disabled" rather than "aged" often face lengthy wait times of over three months between their application and the determination of their disability status.

¶ 68. Under the majority opinion, the entire waiting period plus the three months of retroactive benefits prior to the month of application are subject to the partial reimbursement rule. For individuals who are not institutionalized, the amicus asserts that the amount of reimbursement is highly significant, affecting people's ability to meet ongoing food, clothing, and shelter expenses and increasing the costs of prescription medication.

¶ 69. I believe that for people living below the poverty level the majority opinion causes additional hardships. The majority opinion shifts the burden of spiraling health costs onto the people who can least afford it. The legislature could not have intended this result.

¶ 70. The majority opinion's interpretation is, in my opinion, bad law and bad policy. I cannot join it.

¶ 71. Having resolved that Ms. Keup is entitled to a refund for her October payment, the remaining question is whether the Division of Hearings and Appeals had jurisdiction to provide Ms. Keup with a fair hearing in this case.

II

¶ 72. The majority opinion, echoing the arguments of the DHFS, concludes that the division "did not

have jurisdiction to hear Ms. Keup's claim under Wis. Stat. § 49.45(5)(a) because none of the statutory bases for jurisdiction were met."[21] In doing so, the majority opinion takes a narrow and unrealistic view of DHFS's statutory authority.

¶ 73. Wisconsin Stat. § 49.45(1) directs DHFS to administer the medical assistance program and imposes on the department broad duties including the duty to exercise responsibility relating to fiscal matters, eligibility for benefits and general supervision of the medical assistance program;[22] the duty to determine the eligibility of persons for medical assistance;[23] and the duty to set forth conditions of participation and reimbursement in a contract with providers of services.[24] Section 49.45(5) allows a person who believes that the payments made on his or her behalf have not been properly determined or that his or her eligibility has not been properly determined may file an appeal with DHFS, and DHFS shall give the applicant or recipient an opportunity for a fair hearing.

¶ 74. The Administrative Code sets forth grounds for a fair hearing. Specifically, Wis. Admin. Code § HA 3.03(1) provides that "[a]ny person applying for or receiving Medicaid . . . may appeal any of the following administrative actions of the department or agency . . . (d) The determination of the amount, sufficiency, initial eligibility date of program benefits . . . ."

¶ 75. Section HA 3.03(4) of the administrative code further provides that "[a]n applicant, recipient or former recipient may appeal any other adverse action or

---

[21] Majority op., ¶ 39.

[22] Wis. Stat. § 49.45(2)(a)1.

[23] Wis. Stat. § 49.45(2)(a)3.

[24] Wis. Stat. § 49.45(2)(a)9.

decision by an agency or department which affects their public assistance or social services benefits where a hearing is required by state or federal law or department policy."

¶ 76. In addition, Wis. Admin. Code § HFS 104.01 provides in pertinent part that "[a]pplicants and recipients have the right to a fair hearing in accordance with procedures set out in ch. HSS 225 and this subsection when aggrieved by action or inaction of the agency or the department. . . ."[25]

¶ 77. DHFS is imbued with broad powers and duties. Read together, these provisions grant DHFS and the division jurisdiction to hear medical assistance cases arising from adverse inaction of the department that would affect benefit recipients. I do not understand how DHFS can assert that the division lacks jurisdiction to hear a claim when DHFS is the responsible governmental entity charged with overseeing the administration of medical assistance benefits and ensuring that recipients are properly reimbursed, and when its policy is being challenged. I conclude that the division has jurisdiction for the following reasons.

¶ 78. First, the division has jurisdiction because Ms. Keup claims she was aggrieved by the action and inaction of DHFS. DHFS claims that Ms. Keup was aggrieved by the legislature's enacting the statutes, not by it. This argument ignores, however, that Ms. Keup's claim stems from DHFS's interpretation of the statutes.

¶ 79. Second, contrary to the majority opinion's conclusion,[26] Ms. Keup did claim that her medical assistance payments were not properly determined. Ms. Keup claimed that under the applicable federal and

---

[25] Wis. Admin. Code § HFS 104.01(5)(a)1.

[26] Majority op., ¶ 39.

103

state statutes and rules she did not receive the correct amount of reimbursement. That Ms. Keup may be in error does not mean that the division does not have jurisdiction over her claim. Having jurisdiction to determine the merits of a claim is different from determining the merits. The division had jurisdiction to tell Ms. Keup that she was wrong. When the division refused to provide her with a fair hearing to examine her claim, its action authorized (or might authorize) health care providers to violate Wis. Stat. § 49.49(3m)(a), which prohibits knowingly imposing charges upon a recipient in addition to payments received for services under §§ 49.45 to 49.47.

¶ 80. Third, Ms. Keup can claim that her date of eligibility was improperly determined because medical assistance for the first part of October 1999 was treated as a retroactive payment, to which the exception under § 49.49(3m)(a)2. applied, rather than as a payment for the month of application to an eligible patient for which no exception applied. The provider claimed to be acting in accordance with DHFS policy and the law. DHFS had an affirmative duty to ensure the proper administration of medical assistance benefits under both state and federal law, and it was obligated to provide Ms. Keup with a fair hearing, based on its own administrative rules, to determine the merits of her claim.

¶ 81. Fourth, DHFS was required to provide Ms. Keup a fair hearing to prevent a violation of the directive under federal law that a "state plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by

the plan to be paid by the individual."[27] Because Ms. Keup was (or claimed to be) a fully eligible Medicaid patient for the month of October 1999, the provider's refusal to accept the medical assistance as payment in full (as well as Ms. Keup's claim that DHFS agreed with the provider's position) places the provider (and DHFS) in violation of a federal regulation that DHFS is required to enforce.

¶ 82. Fifth, the majority opinion's conclusion that the division has no jurisdiction because it cannot provide a remedy, namely that it cannot be required to reimburse Ms. Keup because Wis. Admin. Code § HFS 104.01(11) prohibits DHFS from directly reimbursing medical assistance recipients, is not relevant to the issue of jurisdiction. Ms. Keup is requesting that DHFS set forth a policy requiring a full refund of payments in cases like hers and that DHFS instruct the provider to refund her excess payment for the month of October 1999; she is not asking DHFS to pay her directly.

¶ 83. For the reasons set forth, I dissent.

¶ 84. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

---

[27] 42 C.F.R. § 447.15.