WISCONSIN BELL, INC., d/b/a Ameritech Wisconsin,
Petitioner-Appellant,

v.

PUBLIC SERVICE COMMISSION OF WISCONSIN,
Respondent-Respondent.

Court of Appeals

*No. 03–2235. Submitted on briefs April 22, 2004.—Decided
November 18, 2004.*

## 2004 WI App 223

(Also reported in 691 N.W.2d 697.)

732

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Linda M. Clifford* and *Jennifer Cotner* of *La Follette, Godfrey & Kahn*, Madison, with *Steven R. Beck* of *SBC Wisconsin*, Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Michael E. Newmark* and *Edward S. Marion* of *Public Service Commission of Wisconsin*, Madison.

Before Deininger, P.J., Dykman and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. Wisconsin Bell, d/b/a Ameritech Wisconsin, appeals an order of the circuit court affirming a final decision and order of the Public Service Commission (PSC) concluding that Ameritech's Local Saver Packs and Solutions Packages (Packages) are subject to price regulation by the PSC under Wis. Stat. ch. 196 (2001–02).[1] Ameritech argues that the PSC misinterpreted Wisconsin law and acted beyond its statutory authority by imposing price regulation on its Packages. We agree and reverse the order of the circuit court.

## FACTS

¶ 2.	The facts are undisputed. Prior to 1994, telephone service was subject to rate-of-return regulation. The PSC awarded a rate of return on a company's business investment and set the company's prices in return for granting the company an exclusive right to provide telephone services within a given territory.

¶ 3.	Departing from traditional rate-of-return regulation, 1993 Wis. Act 496 partially deregulated the telecommunications industry in Wisconsin, establishing a new regulatory model to transition to a more competitive local telecommunications marketplace. The principal feature of 1993 Wis. Act 496 was the creation of new forms of regulation, such as price regulation, to replace the traditional rate-of-return regulation. Price regulation limits the PSC's jurisdiction over all but certain basic telecommunications services. 1993 Wis. Act 496 created Wis. Stat. § 196.196, which established "price regulation" as an alternative to the more rigid rate-of-return system. In September 1994, Ameritech

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

elected to be subject to price regulation under § 196.196. In doing so, Ameritech submitted to the PSC's price regulation jurisdiction over prices it can charge for "basic local exchange service" in exchange for a substantial reduction of PSC jurisdiction over the prices, terms and conditions for "any other services" it offers, including "new telecommunications services." *See* § 196.196(3)(a).

¶ 4. Between September 1994 and October 2001, an Ameritech customer had only one way to acquire telephone service: purchase, under pre-existing price-regulated tariffs, a working telephone access line and local calling usage at a per-call rate. In October 2001, Ameritech introduced two new types of alternative services for residential customers: Local Saver Packs and Solutions Packages.

¶ 5. Local Saver Packs charge a flat monthly rate, rather than a per-call rate, for basic local exchange service. Local Saver Packs come in three sizes: Local Saver Pack 200, Local Saver Pack 400 and Local Saver Pack Unlimited. The names of the packages reflect the number of local calls included in the package. The cost of each respective Local Saver Pack was less than the cost of purchasing the same number of local calls at the pre-existing, price-regulated per-call rate.

¶ 6. Solutions Packages charge a flat monthly rate for basic local exchange service combined with additional services. Ameritech offered four types of Solutions Packages: Economy, Sensible, Complete and Two Line Complete. Each Solutions Package included an access line, a Local Saver Pack, an intraLATA toll calling plan, Caller ID with name and Call Waiting. The

Solutions Packages differed based upon the additional services, as indicated below:

| Type of Solutions Package | Economy | Sensible | Complete | Two Line Complete |
|---|---|---|---|---|
| **Access Lines** | Primary Only | Primary Only | Primary Only | Primary and Additional |
| **Local Saver Pack** | 200 | Unlimited | Unlimited | Unlimited |
| **IntraLATA Toll Calling Plan** | Anytime Rate Calling Plan | Ameritech Saver Pack 60 | Unlimited Two Point MTS Usage | Unlimited Two Point MTS Usage |
| **Vertical Features** | Caller ID | Caller ID | Caller ID | Caller ID |
| | Caller ID with name | Caller ID with name | Caller ID with name | Caller ID with name |
| | Call Waiting | Call Waiting | Call Waiting | Call Waiting |
| | | Call Forwarding | Call Forwarding | Call Forwarding |
| | | Three-Way Calling | Three-Way Calling | Three-Way Calling |

¶ 7. Like the Local Saver Pack customer, a Solutions Package customer purchaser enjoyed a discount compared to purchasing the components on a stand-alone basis under the pre-existing price-regulated rates. With both the Local Saver Pack and Solutions Packages, an Ameritech customer was still able to purchase basic local exchange telephone services on a per-call basis, as before, under pre-existing price-regulated tariffs or, in the alternative, purchase one of the new flat-rate Packages. Ameritech filed tariffs that described the prices, terms, rate structures and conditions of the Packages.

¶ 8. The rate structure for basic local exchange service includes a recurring monthly rate for the primary residential access line and a per-call rate for each call made within the customer's local exchange or extended service area boundary. This rate structure continues to be available to both new and existing Ameritech customers and Ameritech acknowledges this

rate structure continues to remain subject to the PSC's price regulation authority.

¶ 9. Each year a price-regulated telecommunications utility is obligated to file information with the PSC regarding revenues, investment and service quality. Wis. Admin. Code § PSC 163.04. Using the investment and service quality information, the PSC calculates the utility's annual "price cap index" or PCI. Then, using the revenue information, the PSC applies the PCI to control the amount the utility may increase or must decrease the rates. Wis. Admin. Code § PSC 163.04. The PCI limits the prices the utility may charge for its price-regulated services.

¶ 10. In August 2002, Ameritech filed its annual price regulation information reflecting "Grand Total Residence and Business Revenues" of $208,042,546. This figure did not include revenues generated from the Packages. At the PSC's request, Ameritech filed Comments on whether its Packages were subject to price regulation. Ameritech's Comments asserted that Wis. Stat. § 196.196(3)(a) expressly exempts from PSC jurisdiction "other services, including new telecommunications services, offered by a price-regulated telecommunications utility." Ameritech's Comments contended that the Packages fit the § 196.19(1m)(a) definition of "new telecommunications services" because they were "alternative rate structures" offered after 1993 for any pre-existing telecommunication service and the rate structure effective prior to January 1, 1994 for the pre-existing service continued to be available to both new and existing costumers. According to Ameritech, because the express jurisdictional limitations in § 196.196(3)(a) cross-reference the § 196.19(1m) definition of "new telecommunication services," the Packages fell outside the PSC's jurisdiction.

737

¶ 11. Ameritech's Comments further argued that the Packages did not constitute "basic local exchange service" subject to regulation under WIS. STAT. § 196.196(1)(a) because as "discretionary or optional services," they were expressly excluded from the WIS. STAT. § 196.01(1g) definition of "basic local exchange service."

¶ 12. In a November 1, 2002 Final Decision, the PSC rejected Ameritech's interpretation of WIS. STAT. §§ 196.196(1)(a) and (3)(a) and concluded that the Packages were subject to price regulation because "no definition of 'new telecommunication service' is found in the definitions section of Chapter 196, or in WIS. STAT. § 196.196" and the definition of "new telecommunications service" in WIS. STAT. § 196.19(1m)(a) did not apply to § 196.196(3)(a). The Final Decision did not price regulate all the Packages but limited price regulation to the Local Saver Packs and the access line and local usage components of the Solutions Packages. As a result of its PCI calculations, the Final Decision ordered Ameritech to "file tariffs that decrease its rates by an average of 1.22 percent for price-regulated services." In order to implement the 1.22% decrease on the Packages' revenues, the PSC required Ameritech to "supplement its annual revenue report to include those offerings."

¶ 13. On November 27, 2002, Ameritech filed a petition for WIS. STAT. ch. 227 review of the PSC's Final Decision. On July 9, 2003, the circuit court issued a decision affirming the PSC's Final Decision, concluding that the Packages were subject to price regulation. Ameritech appeals.

## DISCUSSION

### *Standard of Review*

¶ 14. We review the PSC's decision, not that of the circuit court. *Wisconsin Bell, Inc. v. PSC of Wisconsin,* 2004 WI App 8, ¶ 16, 269 Wis. 2d 409, 675 N.W.2d 242, *review granted,* 2004 WI 50, 271 Wis. 2d 108, 679 N.W.2d 544 (No. 02–3163). Here, Ameritech and the PSC debate the degree of deference we owe the PSC's decision. Ameritech argues the PSC's decision is entitled to no deference because this case concerns whether the PSC exceeded its authority and jurisdiction by regulating rates for "new telecommunications services." The PSC argues we should accord its decision great weight because it was not determining the scope of its authority. According to the PSC, the issue before it was whether the basic service portions of the Packages are price regulated, which, according to the PSC, is not an issue addressing the scope of the PSC's authority but a question of statutory interpretation and application to an uncontested set of facts.

¶ 15. Where an agency's decision involves the nature and scope of its own authority and jurisdiction, a question of law, we review its decision de novo. *See Wisconsin Power & Light Co. v. PSC,* 181 Wis. 2d 385, 392, 511 N.W.2d 291 (1994). We agree with Ameritech that the issue presented is one determining the scope of the PSC's authority and jurisdiction and conclude the PSC's decision is entitled to de novo review. The question before us may involve the interpretation of the statutory price regulation scheme but the critical element of that question concerns only whether the PSC has the authority under Wis. Stat. § 196.196(3)(a) to

price regulate the Packages. Thus, this is a jurisdictional question subject to de novo review. *See Wisconsin Power*, 181 Wis. 2d at 392.

¶ 16. Ameritech next argues that the PSC misinterpreted Wisconsin law and acted beyond its statutory authority by imposing price regulation on its Packages. Ameritech maintains that the plain language of the applicable statutes unambiguously support the conclusion that the Packages are exempt from price regulation. We agree.[2]

¶ 17. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. The *Kalal* court noted that "[j]udicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute. We assume that the legislature's intent is expressed in the statutory language." *Id.*

¶ 18. When interpreting a statute, we first look to the plain meaning of the statute. *Keup v. DHFS*, 2004 WI 16, ¶ 17, 269 Wis. 2d 59, 675 N.W.2d 755. When the statutory language is clear and unambiguous, we may not look beyond the plain words of the statute in

---

[2] Ameritech argues that the Packages are exempt from price regulation because they are "discretionary" or "optional" services. Because our conclusion that the Packages are "new telecommunications services" as defined by Wis. Stat. § 196.19(1m)(a) and therefore exempt from price regulation under Wis. Stat. § 196.196(3)(a) is dispositive, we will not address this issue. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938).

question to ascertain its meaning. *Id.* To determine if a statute is ambiguous, we look to the statutory language itself. *Id.* Statutory language is given its usual and common meaning while technical or specialized terms are interpreted according to their unique meanings. *Id.* We are to interpret statutory language in the context within which it is used, "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Kalal*, 271 Wis. 2d 633, ¶ 46 (citations omitted).

¶ 19. If the statute is unambiguous, we must give reasonable effect to the words within the statute according to their common meanings; we are to avoid surplusage. *Id.* "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Bruno v. Milwaukee County*, 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660 N.W.2d 656.

¶ 20. The general rule has been that we do not review extrinsic sources, such as legislative history, its scope, history, context and purpose of the statute, unless there is ambiguity. *Keup*, 269 Wis. 2d 59, ¶ 17. However, the supreme court in *Kalal* instructs us that "scope, context, and purpose are perfectly relevant to a plain-meaning interpretation of an unambiguous statute as long as the scope, context, and purpose are ascertainable from the text and structure of the statute itself, rather than extrinsic sources, such as legislative history." *Kalal*, 271 Wis. 2d 633, ¶ 48. With these principles in mind we turn our attention to determine whether the PSC exceeded its authority by regulating the price of Ameritech's Packages.

*Analysis*

¶ 21. WISCONSIN STAT. § 196.196 addresses telecommunications utility price regulation and "governs rates for basic local exchange service." WIS. STAT. § 196.196(1)(a)1. "Basic local exchange service" is defined as

> the provision to residential customers of an access facility, whether by wire, cable, fiber optics or radio, and essential usage within a local calling area for the transmission of high-quality 2–way interactive switched voice or data communication. 'Basic local exchange service' includes extended community calling and extended area service. 'Basic local exchange service' does not include additional access facilities or any discretionary or optional services that may be provided to a residential customer. 'Basic local exchange service' does not include cable television service or services provided by a commercial mobile radio service provider.

WIS. STAT. § 196.01(1g).

¶ 22. WISCONSIN STAT. § 196.196, entitled "Telecommunications utility price regulation," expressly exempts "new telecommunications services" from price regulation:

> **(3)** PRICE REGULATION OF OTHER SERVICES. (a) Except to the extent expressly permitted by this section and ss. 196.19(1m), 196.194, 196.195, 196.20(1m), 196.204, 196.209 and 196.219, *the commission may not have jurisdiction over the prices or terms and conditions for the offering of any other services, including new telecommunications services,* offered by a price-regulated telecommunications utility.

(Emphasis added.) "New telecommunications services" is not defined in § 196.196. However, it is defined in WIS. STAT. § 196.19(1m)(a) as

742

services that are not offered by the telecommunications utility before January 1, 1994, and *alternative rate structures* offered after December 31, 1993, for any telecommunications service that is offered before January 1, 1994, if the rate structure effective before January 1, 1994, continues to be available to new and existing customers. 'New telecommunications service' includes additional functions and features on, and technological alternatives to, any telecommunications service offered before January 1, 1994.

(Emphasis added.)

¶ 23. The PSC asserts that the Packages do not qualify as "new telecommunication services" because the WIS. STAT. § 196.19(1m)(a) definition of "new telecommunication services" cannot apply to WIS. STAT. § 196.196(3)(a). The PSC argues that § 196.19(1m)(a) explicitly limits its definition of "new telecommunications services" to "this subsection," meaning the subsection of § 196.19(1m), and that by reading the definition of "new telecommunications service" as provided by § 196.19(1m)(a) into § 196.196(3)(a), a conflict is created within § 196.196(3)(a). The PSC contends § 196.196 cannot sensibly be read to confer regulatory authority by the PSC over basic local exchange services and then take that authority away by allowing basic local exchange services to be renamed "new" services. We disagree with each contention.

¶ 24. The entire section of a statute and related sections should be considered in its construction or interpretation; we do not read statutes out of context. *Abbas v. Palmersheim*, 2004 WI App 126, ¶ 18, 275 Wis. 2d 311, 685 N.W.2d 546, *review dismissed,* 2004 WI 138, 276 Wis. 2d 26, 689 N.W.2d 55 (Wis. Nov. 22, 2004) (Nos. 02–3390, 03–1267). In determining the meaning

of any single phrase or word in a statute, it is necessary
to look at it in light of the whole statute and related
sections. *Id.* Statutes relating to the same subject
matter are to be construed together and harmonized.
*Id.* We must interpret statutes to effectuate the purpose
of the whole act; a construction that will defeat the
manifest object of the act is disfavored. *Id.* These rules
guide our consideration of the interplay of the statutes
at issue here.

¶ 25. WISCONSIN STAT. § 196.196(3)(a) expressly
cross-references WIS. STAT. § 196.19(1m), which con-
tains the only definition of "new telecommunications
services" in WIS. STAT. ch. 196. Such cross-referencing
therefore incorporates the terms of § 196.19(1m) into
§ 196.196(3)(a)'s provisions. *See Layton Sch. of Art &
Design v. Wisconsin Employment Relations Comm'n*, 82
Wis. 2d 324, 337–38, 262 N.W.2d 218 (1978). By virtue of
this reference, § 196.19(1m)'s definition of "new tele-
communication services" has been expressly written
into § 196.196(3)(a). Section 196.19(1m)(a)'s use of the
phrase "in this subsection" merely specifies that the
definition applies in this subsection; it does not in any
way limit that definition to that subsection only. To
conclude otherwise would essentially render
§ 196.196(3)(a)'s reference to § 196.19(1m) a nullity.

¶ 26. In addition, both WIS. STAT. § 196.196(3)(a)
and WIS. STAT. § 196.19(1m) are unambiguous in the
context of WIS. STAT. ch. 196 as a whole. Only three
statutes use the phrase "new telecommunications ser-
vices:" WIS. STAT. §§ 196.196(3)(a), 196.19(1m) and
196.209. All three sections were created at the same
time. *See* 1993 Wis. Act 496. However, "new telecommu-
nications services" is defined only in § 196.19(1m)(a).
When the legislature uses the same term repeatedly in

the same statute, it almost certainly intends the term should mean the same each time it is used. *Coutts v. Wisconsin Ret. Bd.*, 209 Wis. 2d 655, 668–69, 562 N.W.2d 917 (1997). In other words, when we are required to construe a statute, "the entire section and related sections are to be considered in its construction or interpretation." *State v. Clausen*, 105 Wis. 2d 231, 244, 313 N.W.2d 819 (1982). Application of this rule leads us to conclude that the definition of "new telecommunications services" as stated in WIS. STAT. § 196.19(1m)(a) applies to WIS. STAT. § 196.196(3)(a).

¶ 27. If we do not apply WIS. STAT. § 196.19(1m)(a)'s definition of "new telecommunications services" to WIS. STAT. § 196.196(3)(a), § 196.19(1m)(a) provides an incomplete regulatory treatment of "new telecommunications services." Alone, § 196.19(1m) only addresses the creation of "new telecommunications services" and does not address the regulation of "new telecommunications services." Section 196.196(3) accomplishes this mission by allowing a company to change rates for existing "new telecommunications services" with only limited tariff and customer notice requirements. *See* §§ 196.196(3)(b) and (c). By incorporating § 196.19(1m) into § 196.196(3)(a), a complete regulatory scheme is established.

¶ 28. The PSC next argues that if Ameritech is permitted to recraft its basic local exchange services into "new" services by simply adding other services and new rates while retaining basic local exchange services, that would be conferring price-regulated utilities the power to unilaterally abandon price regulation of basic local exchange services. The PSC appears to misunderstand its own regulation.

745

¶ 29. The legislature intended to create incentives to telecommunications providers such as Ameritech by directing the PSC to

> regulate all telecommunications utilities with the goal of developing alternative forms of regulation that provide incentives to the utility to achieve specified goals, including the promotion of competition, infrastructure deployment, economic development and consumer choice.[3]

John Stolzenberg, "Summary of LRB-6015/1, Relating to Regulations Affecting the Telecommunications Industry," Wisconsin Legislative Council Staff Memorandum to the Joint Committee On Information Policy, Introduction at 1, 2 (April 18, 1994). To that end, the legislature enacted 1993 Wis. Act 496. Act 496 created WIS. STAT. § 196.196, which established price regulation as an alternative to the rate-of-return system in place at that time. Section 196.196(1)(d) expressly permits a price-regulated telecommunications utility to alter the rate structure for a price-regulated service, so long as the pre-existing rate structure continues to be offered.

---

[3] Then-Wisconsin Governor Tommy Thompson convened a Blue Ribbon Telecommunications Infrastructure Task Force, which issued a number of recommendations. Recommendation 1.1 states

> The PSC of Wisconsin should take a proactive role in developing a competitive telecommunications marketplace, and facilitating the introduction of innovative new services in this competitive marketplace.

John Stolzenberg, "Summary of LRB-6015/1, Relating to Regulations Affecting the Telecommunications Industry," Wisconsin Legislative Council Staff Memorandum to the Joint Committee On Information Policy, Introduction at 1, 2 (April 18, 1994). The Bill, LRB-6015/1, was designed to implement the recommendations of the task force.

The Packages were created as alternative services for residential customers; the pre-existing rate structure for basic local exchange services has not been affected by the introduction of these "new" service packages. The rate structure for basic local exchange services has been in effect since before December 31, 1993 and continues to be available to new and existing Ameritech Wisconsin customers. The PSC continues to regulate these prices.

¶ 30. The Packages fall squarely within the definition of "new telecommunications services" under WIS. STAT. § 196.19(1m)(a); they are alternative rate structures to basic local exchange services offered after 1993 and the rate structure effective before January 1, 1994 for pre-existing telecommunications services continues to be available to customers. The new services provided in the Packages include "additional functions and features" on the basic local exchange services that were offered prior to January 1, 1994 by charging a flat monthly rate, rather than a per-call rate, for basic local exchange services (Local Saver Packs) and by charging a flat monthly rate for basic local exchange services combined with additional services (Solutions Packages). Therefore, because the definition of "new telecommunications services" as provided by § 196.19(1m)(a) encompasses the Packages by Ameritech, and because that definition is cross-referenced in WIS. STAT. § 196.196(3)(a) which limits the PSC's rate-regulation jurisdiction, we conclude the PSC exceeded its jurisdiction by regulating the rate structure of the Packages.

## CONCLUSION

¶ 31. We conclude that the definition of "new telecommunications services" in WIS. STAT. § 196.19(1m) is unambiguously incorporated into WIS. STAT.

747

§ 196.196(3)(a). We also conclude the Packages fall within the definition of "new telecommunications services" because they offer alternative rate structures and expanded services beyond the basic local exchange service in existence since before December 31, 1993. Consequently, Ameritech's Packages are exempt from price regulation under § 196.196(3)(a). We therefore reverse the order of the circuit court.

*By the Court.*—Order reversed.